ANDERSON WOODS *et al.*, Plaintiffs-Appellees and Cross-Appellants, *v.* MOHAMMAD KHAN *et al.*, Defendants-Appellants and Cross-Appellees.

Fifth District No. 79-577

Opinion filed April 1, 1981.

Timothy F. Campbell, of Godfrey, for appellants.

Steven N. Mottaz, of Thomas, Mottaz & Eastman, of Alton, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiffs brought suit in the circuit court of Madison County to enjoin the defendants' poultry business as a private nuisance and to recover damages caused by that nuisance. A bench trial was held only on the issue of injunctive relief. The trial court ordered the defendants to "* * * cease and desist from operating the poultry facility located at * * * in the manner as presently operated regarding the collection and dispersal of manure * * *" within 30 days. In that order the court also dismissed the complaints of plaintiffs Brownlee, Johnson, Nichols, Schetter and Swanson, who did not appear at trial. The defendants appeal from the granting of the injunction, while those dismissed plaintiffs cross-appeal from the dismissal of their complaints.

All of the plaintiffs are homeowners who reside within a mile of the defendants' enterprise. They had lived in this area of rural Godfrey, Illinois, before the egg-production facility was constructed in 1977 and 1978. This neighborhood was zoned agricultural, and, indeed, many of the plaintiffs raised crops and livestock on their property.

The defendants' barn-like structure houses 50,000 chickens which lay eggs. It can be termed a "medium-large" facility. The birds are fed and watered, and the eggs are removed from their cages, mechanically. Nineteen large fans serve to circulate air to all of the cages, which are located eight feet above ground level. All manure falls from the cages into deep pits below. Twelve smaller fans draw air over the waste in order to dry it. Eventually, the dried matter in the pits is removed by farmers and gardeners for use as fertilizer. During the first year of the operation of this business, the manure was removed every six months.

The lots of neighboring homeowners are located between 25 and 1000 feet of the defendants' building. At the trial, those involved in this suit testified that the new enterprise brought with it several annoyances. Fowl odors permeated the neighborhood and the plaintiffs were beset by swarms of "fat, lazy flies." The strength of the smell and the number of the insects varied from day to day and from season to season, but all witnesses for the plaintiffs acknowledged their discomfort. Some were required to seal their houses during hot, humid summer days when both odor and insect problems were at their worst. Some curtailed their outdoor activities and stopped inviting guests to their homes. Still others experienced physical ailments, including breathing difficulties, sore throats and feelings of nausea which they attributed to the egg facility.

After hearing the evidence, the court issued the requested injunction (though that term is not expressly used) closing the facility. That order stated:

> "[N]othing in this order should prohibit the defendants from taking steps necessary to change the nature of the operation and reduce the odors eminating on [sic] their property within tolerable levels; that is in the elimination of large accumulations of manure. Such manure to be removed at least once a week into a closed system or dispersal. Further, the closing down of the large fans for drying manure and sealing up the building except for ventilation necessary to insure the health of the flock."

The defendants challenge this order as (1) against the weight of the evidence and (2) uncalled for when the plaintiffs contributed to the conditions they complained of.

■■ It has long been established that in order to be actionable as a private nuisance an invasion of another's interest in the use and enjoyment of his land must exist. It must be substantial and it must be either negligent or intentional and unreasonable. (*Patterson v. Peabody Coal Co.* (1954), 3 Ill. App. 2d 311, 122 N.E.2d 48.) Plaintiffs concede that the defendants were not negligent in the operation of their business, so our concern lies in whether the invasion was intentional, substantial and unreasonable.

■ A substantial and intentional invasion must be severe enough to con-

stitute a material annoyance to the adjoining landowners and be foreseen as to its consequences by the offending landowner. Whether we hold that chickens are more offensive than other types of livestock (*Patz v. Farmegg Products, Inc.* (Iowa 1972), 196 N.W.2d 557), or whether we agree with one of the expert witnesses below that "manure is manure," we conclude that the trial court properly determined that the odors and flies were sufficiently bothersome to justify injunctive relief. Furthermore, the complaining homeowners cannot be found to be unduly sensitive (*Belmar Drive-In Theatre Co. v. Illinois State Toll Highway Com.* (1966), 34 Ill. 2d 544, 216 N.E.2d 788) and may in no way be referred to as delicate and fastidious, pursuing a dainty way of life. The invasion of their land was both substantial and intentional.

██ An invasion is not unreasonable, however, unless the gravity of the harm done to the plaintiffs outweighs the utility of the defendants' business and the suitability of the location of that business. (*Patterson.*) This balancing process requires that the following questions be answered: (1) Are the defendants engaged in a useful enterprise? (2) Is this area of rural Godfrey well suited for an egg production facility? (3) Which came first, the chickens or the plaintiffs? (4) Can the odors and flies be reduced? (5) Is modification of the facility practical?

██ The defendants' egg business is certainly part of a vital industry, and this court realizes that the defendants have invested more than "chicken feed" in their operation. But the evidence at trial suggests that this medium-large facility, a newcomer to the area, is simply located too close to several residences. One expert testified, for example, that the American Society of Agricultural Engineers recommends that an operation like the one in question should not be located within one-half mile of residential property.

██ The fact that some plaintiffs also raise livestock does not change this assessment. The trial court stated that "when these private residences were built, this area was zoned agricultural and the owners should reasonably have expected that agricultural operations would be carried on which could lead to some production of odors or inconveniences consistent with an agricultural operation which would not be found in the city. Agricultural smells, however, can reach a point whereupon a civil court may enjoin their production when they overwhelmingly interfere with the rights of others to enjoy their property." With this statement we must agree. The defendants urge that the plaintiffs' own contributions to the problems of which they complain prevent them from seeking an injunction. We disagree, for contributory negligence has no place in a nuisance action. *Belmar.*

Witnesses at trial showed that the defendants may be able to correct the nuisance-causing problems at issue. Instead of forcing the manure-

scented air out of the building as an incident of the drying process, the defendants could possibly convert their waste disposal methods to a wet-waste system or to an underground storage system. At the very least, the manure could be removed more frequently than semi-annually. The trial court's order, which considers these facts, and which is fairly based on the evidence presented at trial, is certainly not manifestly against the weight of that evidence and will not be disturbed. *City of Chicago v. Commonwealth Edison Co.* (1974), 24 Ill. App. 3d 624, 321 N.E.2d 412.

Our conclusions also comport with decisions which have shut down egg production facilities because of complaints similar to those made here. *City of Girard v. Girard Egg Corp.* (1967), 87 Ill. App. 2d 74, 230 N.E.2d 294, while not controlling, is nonetheless instructive. In that case the city sought an injunction under an ordinance which stated that a chicken house which remained in an "offensive or unwholesome condition" shall be a nuisance. The appellate court felt that the testimony of neighbors "that the operation of the Girard Egg Corporation caused foul and obnoxious odors in their homes, particularly in warm weather [and] that they had been bothered with large quantities of flies attracted to the neighborhood by reason of the egg business," among other complaints, was sufficient to support the injunction.

The Supreme Court of Iowa has also held that an operation quite similar to that in this case is a nuisance. In *Patz v. Farmegg Products, Inc.* (Iowa 1972), 196 N.W.2d 557, the defendants operated a larger facility than that in issue here, and the plaintiffs were located farther from it than are the plaintiffs here from the defendants' business. However, the dry-waste system in *Patz* was identical to the system used by these defendants. The court concluded that "[t]he operation clearly constituted a nuisance." (196 N.W.2d 557, 562.) We find that similar results were reached in many cases discussed in the thorough annotation at 2 A.L.R.3d 965 (1965).

■■ Having held that the injunction was properly granted, we now turn to the cross-appeal of plaintiffs Brownlee, Johnson, Nichols, Schetter and Swanson, whose complaints were dismissed. The defendants are correct in stating that a default judgment may be entered for failure to appear (Ill. Rev. Stat. 1979, ch. 110, par. 50(4)). That dismissal below was proper insofar as it was restricted to the prayer for injunctive relief, which was tried. However, to dismiss the entire complaint of these plaintiffs, including their requests for damages, would be unfair. Cases which have discussed default judgments have emphasized the need to prevent entry of such a judgment without adequate notice. (*Lutz v. Lutz* (1977), 55 Ill. App. 3d 967, 371 N.E.2d 348; *Groves v. Sebastian* (1968), 98 Ill. App. 2d 347, 240 N.E.2d 192.) The trial court, by setting the case for hearing only on the propriety of an injunction, did not alert the plaintiffs that their

causes of action for damages could possibly be dismissed. Consequently, we must reverse the dismissal of the complaints of the above-mentioned plaintiffs to the extent that the dismissal extends to issues beyond the prayer of injunctive relief.

Affirmed in part; reversed in part; remanded.

KASSERMAN, P. J., and WELCH, J., concur.