In re BLOOMINGDALE PARTNERS, an Illinois limited partnership, Debtor.

Bankruptcy No. 91 B 11678.

United States Bankruptcy Court, N.D. Illinois, E.D.

Nov. 5, 1993.

Gregory G. Wrobel, Mitchell E. Jones, John D. Malarkey, Michael L. Kayman, Vedder, Price, Kaufman & Kammholz; and James L. Lucari, Holleb & Coff, Chicago, IL, for debtor.

Philip V. Martino, Rudnick & Wolfe, Chicago, IL, for debtor's gen. partners.

Peter A. Sarasek, Leonard S. Shifflett, Thomas J. Magill, and Todd A. Rowden, Wilson & McIlvaine, Chicago, IL, for John Hancock Mut. Life Ins. Co.

1. Unless otherwise indicated, all statutory citations refer to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. The extensive background of this case is set forth in two published opinions, *In re Blooming-*

David J. Fisher, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Fleet Nat. Bank.

Joseph J. Casper, the Jeff Diver Group, Glen Ellyn, IL, for John and Jean Zarlenga.

Katy Gleason, Dept. of Justice, U.S. Trustee's Office, Chicago, IL, for U.S. Trustee.

### MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

### I. INTRODUCTION

The following two matters are before the Court for ruling: 1) the Debtor's objection to the claim filed by John and Jean Zarlenga; and 2) the Zarlengas' motion for an order allowing and assigning a value to their unliquidated claim for the purpose of voting on the Debtor's Third Plan of Reorganization. *See* § 502(c)(1);[1] Fed.R.Bankr.P. 3018(a). For the reasons discussed below, the Court overrules the Debtor's objection to the Zarlengas' claim and allows the joint claim of John and Jean Zarlenga in the amount of $40,000.

### II. BACKGROUND[2]

The matters currently before the Court involve a pre-petition cause of action for Illinois state common law private nuisance held by the Zarlengas. The facts concerning this cause of action were the basis of a "formal noise complaint" filed by the Zarlengas before the Illinois Pollution Control Board (the "Board") on October 23, 1989, over 17 months before the Debtor filed its chapter 11 petition. Although the Zarlengas' petition before the Board relied upon statutory grounds for its requested relief, not upon a common law private nuisance theory, the facts supporting the two theories are identical.

The Board issued an "Interim Opinion and Order of the Board," *Zarlenga v. Partner-*

*dale Partners*, 155 B.R. 961 (Bankr.N.D.Ill.1993), and *In re Bloomingdale Partners*, 160 B.R. 93 (Bankr.N.D.Ill.1993).

*ship Concepts,* PCB 89–169 (May 9, 1991),[3] in which it found that Bloomingdale Partners and its three general partners violated certain Illinois noise pollution statutes and regulations. Accordingly, the Board ordered those respondents to submit "a report on the methods of reducing or eliminating the noise pollution at One Bloomingdale Place...." *Id.* at 18.

There is some dispute between the parties concerning the Debtor's compliance with this order and its subsequent abatement of the noise pollution. Ordinarily a court faced with deciding a common law private nuisance claim based upon noise pollution would be quite interested in the purported tortfeasor's conduct after an administrative tribunal found that the tortfeasor was in violation of state noise pollution statutes and regulations. However, the Debtor's degree of compliance with the Board's order and its subsequent actions have limited relevance for the purposes of the instant proceeding because the Debtor filed its chapter 11 petition 21 days after the Board released this opinion, and the Court must determine the validity and amount of the Zarlengas' claim as of the date of filing.[4] *See* § 502(b).

## III. FACTS

The Zarlengas included the Board's opinion as a part of their proof of claim, and the opinion was admitted into evidence at the hearing before this Court. All of the evidence offered at the hearing is consistent with the evidence and facts recited in the opinion, and the opinion accurately describes the facts and contentions underlying this controversy as follows:

3. The Zarlengas ultimately named seven entities as respondents in their petition: Partnership Concepts ("a general partnership through which limited partnerships are formed, but which does not have any interest in One Bloomingdale Place," *id.* at 3); Bloomingdale Partners (the Debtor in this case, an Illinois limited partnership that owns One Bloomingdale Place); Howard Edison, Bruce McClaren, and Gary Laken (the three general partners of Bloomingdale Partners); Cove Development Company (the general contractor for One Bloomingdale Place); and Thomas O'Brien (the architect for One Bloomingdale Place and a principal of Cove Development Company). The Board dismissed Partnership Concepts, Cove Development Company, and

On October 23, 1989, John Zarlenga and Jean Zarlenga ("Zarlenga") filed a formal noise complaint with the Board....

In their complaint, the Zarlengas allege that the air conditioning units, generators, fans, and swimming pool dehumidifier located at the respondents' apartment complex emit excessive noise beyond the boundaries of the complex in violation of Section 24 of the Environmental Protection Act (Ill.Rev.Stat.1989, ch. 111½, par. 1024) ("Act") [now codified as 415 ILCS 5/24 (1993)].

## BACKGROUND

On March 4, 1987, the Zarlengas closed on the purchase of a new townhome at 23 Country Club Drive, which is on the southwest corner of the intersection of Country Club Drive and Royal Avenue in Bloomingdale, Illinois. The townhome was constructed pursuant to a real estate contract that was executed by the Zarlengas some time between March and August of 1986.

Subsequent to the time that the Zarlengas purchased their townhome, the respondents constructed One Bloomingdale Place, an eight-story apartment complex. The complex is located at Schick Road and Country Club Drive and is north of the Zarlengas' townhome, across Royal Avenue. The complex contains 168 apartments which house approximately 300 residents. ... The building was first occupied in April, 1988, and was fully occupied by February 1989. The building is owned by Bloomingdale Partners, a limited partnership in which Mr. Howard Edison, Mr.

Mr. O'Brien as parties in the Zarlengas' action (although it retained their names on the caption) because it found that those entities neither own nor operate One Bloomingdale Place. *Id.* at 3–4.

4. The parties' post-petition conduct is relevant in one respect. As discussed in Part IV.A.2.c. below, the Court must determine the reasonableness of the Debtor's conduct by weighing the harm done to the Zarlengas against the utility of the Debtor's business and the cost of abatement. The parties presented evidence of the Debtor's post-petition efforts to abate the noise. This evidence is relevant to the issue of reasonableness.

Gary Lakin, and Mr. Bruce McClaren are the general partners.

All of the apartments in the complex have balconies, and permanently affixed heating/air-conditioning units which weigh 900 pounds each. Between 60 and 65 units face Royal Avenue and the Zarlengas' property. The building has an indoor pool and a clubhouse on its first floor. The pool area and clubhouse are cooled by a dehumidifier, known as the Zephyr unit, and another heating/air conditioning unit. Although the Zephyr unit is located inside the complex and does not exhaust to the outside, the heating/air-conditioning unit which has one condenser fan and a heat exchanger, a condensing unit which consists of two fans and a coil, and two four-inch exhaust flues for the pool and spa boilers are located outside and along the south side of the building facing Royal Avenue and the Zarlengas' property. (Footnote 3: There is a great deal of conflicting testimony regarding which equipment is on the outside of the complex, which equipment exhausts to the outside of the complex, and which equipment is responsible for the noise emissions.) A three foot fence and shrubs surround the heating/air conditioning unit.

On or about March 22, 1989, Mr. Zarlenga approached Mr. Thomas O'Brien, one of the architects of the building to express his concern about the noise levels from the building. After several conversations with Mr. O'Brien, Mr. Zarlenga was told to contact Mr. Edison, one of the owners of the property. Mr. Zarlenga talked with Mr. Edison on several occasions, and contacted the Village of Bloomingdale in an attempt to resolve the problem before filing the formal complaint with the Board on September 5, 1989.

\*     \*     \*     \*     \*     \*

*TESTIMONY REGARDING NUISANCE*

At hearing, several witnesses testified on behalf of the Zarlengas. First, Mr. Zarlenga characterized the noise as a "loud rumbling sound" that occurs 24 hours a day, and stated that it had the following effect:

You can't sleep because of the noise. You can't live (sic) inside the house because of the noise. You can't have anybody sitting on the patio because of the noise.

Mrs. Zarlenga, on the other hand, described the sounds emanating from One Bloomingdale Place as "rumbling, humming noises" that are "continuous and monotonous". She also stated that the noise had the following effect:

It's made my life miserable. I cannot use my deck. I cannot have company over.... I can't open my windows in my bedroom. I toss and turn all night. If I am fortunate enough to be able to fall asleep from being dog tired from the previous three days from not sleeping, either the dehumidifier or the Zephyr goes on or some of the air conditioners go on.

Mr. Zarlenga's parents, both of whom have lived with the Zarlengas since March, 1987, also testified at hearing. Mr. Zarlenga's father, John Sr., characterized the noise as a "loud humming sound" that continues throughout every night during the summer, and stated that he often sleeps in the basement because of the noise. He also stated he must put on ear phones to listen to the television or, if he is not watching television, go downstairs every night in the summer. Mr. Zarlenga's mother, Esther, characterized the noise as a constant "rumbling sound". She also stated that she can not [sic] stay in her bedroom or open the windows and that she has to spend time in the basement of the townhome.

\*     \*     \*     \*     \*     \*

Mr. Gregory T. Zak, who has been a Noise Technical Advisor with the Illinois Environmental Protection Agency during the past 18 years, also testified on behalf of the Zarlengas. Although Mr. Zak testified that he had never visited the area, heard the noise, interviewed people in the area, or taken sound measurements, he stated that he believed that there was a "very high likelihood of a noise problem being generated". Mr. Zak testified that his conclusion was based upon the testimo-

ny at hearing, his experience, the facts of the photographs presented into evidence, and the information supplied by the manufacturers of the offending units. Mr. Zak also testified that the design of the apartment complex enhances the noise effect of the individual air-conditioning units and the units associated with the pool and clubhouse. Specifically, Mr. Zak testified that the configuration of the building is very similar to that of a loud speaker or a rough parabolic shape and that, as a result of the building being high and having multiple sound sources on it, sound is focused at a point in front of the structure. With regard to the acoustical effect of the simultaneous use of the individual air-conditioning units and other noise sources, Mr. Zak explained that each unit has an exhaust fan and that the fans run slightly out of phase when they are turning. He added that, as a result, there is constructive and destructive interference of the sound waves that can best be described as a throbbing or a very low frequency noise.

Ms. Cathy Macaione, the building manager of the complex who has also lived on the northwest side of the building since August of 1988, testified on behalf of the respondents. With regard to the individual air conditioning units, she stated that, when her windows are open and she is in her middle room or bedroom, she can hear continuous airplane noise (i.e. every 15 or 20 minutes) and children yelling during baseball games in a nearby baseball field. She also stated that, when she is in her bedroom with the window open, she can hear an air conditioning unit that is opposite the window when it turns on and off. She added, however, that the noise from the airplanes rather than individual air conditioning units at the complex interfere with her use and enjoyment of her property. She also stated that the majority of residents are not at the complex at the same time because many of them travel and that, as a result, many of the individual air conditioning units are off. Finally, she stated that, to her knowledge, there have been no complaints from either the residents of One Bloomingdale Place or the neighbors of the complex (other than the Zarlengas) regarding the complex's noise levels.

*Zarlenga v. Partnership Concepts*, PCB 89–169, at 1–8 (May 9, 1991) (citations and footnotes omitted).

At the hearing before this Court, Mr. and Mrs. Zarlenga each testified, as they had before the Board, about the nature and level of the noise emanating from One Bloomingdale Place. Additionally, the Zarlengas introduced evidence that they first noticed excessive noise emanating from the Debtor's building in late 1987 and that Mr. Edison first acknowledged the noise problem in June of 1988. Moreover, no other townhome in their project is situated similarly in relationship to One Bloomingdale Place. The Debtor offered no contrary evidence.

With regard to damages, the Zarlengas presented some evidence concerning the decrease in the value of their townhome attributable to the noise, and they testified at length concerning the personal inconvenience, annoyance, and discomfort they suffered as a result of the noise. Specifically, Jean Zarlenga testified that the noise keeps her awake at night, gives her headaches, and generally makes her irritable. Her use of earplugs has not satisfactorily reduced the noise. She consulted a physician concerning her health problems caused by the noise, but, short of prescribing addictive drugs, which Mrs. Zarlenga refuses to take, there is nothing that the doctor can do to alleviate her suffering. Mrs. Zarlenga also testified that she cannot enjoy the ordinary use of her townhome because the excessive noise prevents her from opening the windows, sitting on the deck, or entertaining guests.

John Zarlenga's testimony echoed that of his wife. Additionally, Mr. Zarlenga testified that the annoyance and irritability caused by the noise has adversely affected his relationships with his wife and his parents, who also live in the townhome. None of the evidence concerning the Zarlengas' personal inconvenience, annoyance, and discomfort caused by the noise was effectively disputed by the Debtor.

## IV. DISCUSSION

### A. DEBTOR'S OBJECTION TO ZARLENGAS' PROOF OF CLAIM

The Debtor objects to the Zarlengas' proof of claim on two grounds.[5] First, the Debtor alleges that the Zarlengas' proof of claim is facially invalid because it states no legal basis for their claim. Second, the Debtor argues that even if the Zarlengas' proof of claim is deemed to raise a cause of action for common law private nuisance, that cause of action fails on the merits.

#### 1. Validity of the Zarlengas' Proof of Claim

■ At the hearing, the Zarlengas' attorney clarified that the Zarlengas' claim is based upon a cause of action for common law private nuisance. The Debtor contends that the Zarlengas' proof of claim is invalid because it does not make that claim explicit.

Indeed, at ¶ 2 of the proof of claim form the following statement is printed: "2. The debtor was, at the time of the filing of the petition initiating this case, and still is indebted [*or* liable] to this claimant, in the sum of $". After this statement, the Zarlengas' attorney typed the following: "The debt is unliquidated. See attached order of the Illinois Polution Control Board" [sic]. Paragraph 3 of the form declares as follows: "3. The consideration for this debt [*or* ground of liability] is as follows:". The space after this statement was left blank.

The Zarlengas' attorney did attach a copy of the Board's opinion, *Zarlenga v. Partnership Concepts*, PCB 89–169 (May 9, 1991), to the one-page proof of claim form, but the Zarlengas' petition before the Board was based upon statutory grounds, not upon common law private nuisance. Moreover, the Board cannot award money damages. *See* Debtor's Objection, at 3 n. 2; Zarlengas' Resp. ¶ 19, at 5. Accordingly, the Debtor argues, the Zarlengas' proof of claim is facially invalid because it does not set forth any basis for a monetary debt owed by the Debtor to the Zarlengas. *See* Fed.R.Bankr.P. 3001(a).

The Court overrules the Debtor's objection on this ground for two reasons. First, the Zarlengas' proof of claim is not facially invalid; it complies with the lenient requirements established by the Code and the Rules.

The Code defines "claim" in extremely broad terms. *See* § 101(5)(A) (" 'claim' means right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"). Similarly, the Rules do not demand that a creditor plead its proof of claim with specificity or precision. *See* Fed.R.Bankr.P. 3001(a) ("A proof of claim is a written statement setting forth a creditor's claim."). Instead, the proof of claim merely "must contain a demand by the creditor against the debtor's estate, and an intent to hold the debtor's estate liable." *Liakas v. Creditors' Committee*, 780 F.2d 176, 178 (1st Cir.1986).

The Zarlengas' proof of claim meets these lenient requirements; it is a written statement, on the proper form, that makes a demand on the Debtor's estate for unliquidated damages and makes reference to the facts supporting the claim. The fact that the Zarlengas' proof of claim does not explicitly allege a common law private nuisance cause of action is not a fatal defect.

■ Second, even if the Zarlengas' proof of claim is technically deficient because it does not explicitly raise their cause of action for common law private nuisance, the Zarlengas would be allowed to amend their proof of claim to correct this technical deficiency, at least in the Seventh Circuit. *See In re Stoecker*, 5 F.3d 1022, 1028 (7th Cir.1993) ("A

---

5. In its filed objection, the Debtor raised the following three grounds for disputing the Zarlengas' claim: "The basis of Zarlenga's [sic] Claim has been dismissed," "The Claim is not certain and does not seek specific damage," and "The Zarlenga Claim Is Not Subject To Estimation." The first point deals with post-petition proceedings before the Board (about which the parties disagree) and the parties' post-petition conduct. As discussed in Part II. Above, post-petition activities are largely irrelevant under § 502(b), so this ground is without merit. Counsel for the Debtor explained the Debtor's remaining two objections during his closing argument at the evidentiary hearing.

creditor should therefore be allowed to amend his incomplete proof of claim ... to comply with the requirements of Rule 3001, provided that other creditors are not harmed by the belated completion of the filing."). No party would be "harmed" or "prejudiced," within the meaning of *Stoecker*, by the Zarlengas' amendment of their proof of claim because it is clear from the face of the proof of claim that the Zarlengas are seeking money damages from the Debtor on account of the Debtor's emanation of excessive noise from its building. *Id.* ("To say that an error is prejudicial means not that if the error is corrected someone will lose, which is almost always true, but that the error itself imposed a cost, as by misleading someone.").

## 2. Evaluation of the Zarlengas' Cause of Action for Common Law Private Nuisance

The Debtor also objects to the Zarlengas' claim on the ground that they have not proven and cannot prove a cause of action for common law private nuisance. The Court overrules the Debtor's objection on this ground because it finds that the Zarlengas have established a common law private nuisance claim.

In Illinois, "[i]t has long been established that in order to be actionable as a private nuisance an invasion of another's interest in the use and enjoyment of his land must exist. It must be *substantial* and it must be either *negligent* or *intentional and unreasonable."* *Woods v. Khan,* 95 Ill.App.3d 1087, 1089, 51 Ill.Dec. 470, 472, 420 N.E.2d 1028, 1030 (5th Dist.1981) (emphasis added); *see also Statler v. Catalano,* 167 Ill.App.3d 397, 403, 118 Ill. Dec. 283, 288, 521 N.E.2d 565, 570 (5th Dist.), *appeal denied,* 122 Ill.2d 595, 125 Ill.Dec. 237, 530 N.E.2d 265 (1988); *Patterson v. Peabody Coal Co.,* 3 Ill.App.2d 311, 316, 122 N.E.2d 48, 51 (4th Dist.1954).

The Zarlengas presented no credible evidence that the Debtor constructed, operated, or maintained its building in a *negligent* manner, but the Court finds that the Zarlengas proved that the noise created by the Debtor constituted a *substantial* interference that was *intentional and unreasonable.*

### a. Substantial Invasion

In order to be considered "substantial," the "invasion must be *severe enough to constitute a material annoyance* to the adjoining landowners." *Woods,* 95 Ill.App.3d at 1089–90, 51 Ill.Dec. at 472, 420 N.E.2d at 1030 (emphasis added). This is an objective test. *See id.* at 1090, 51 Ill.Dec. at 472, 420 N.E.2d at 1030 ("[T]he complaining homeowners cannot be found to be unduly sensitive and may in no way be referred to as delicate and fastidious, pursuing a dainty way of life." (citing *Belmar Drive–In Theatre Co. v. Illinois State Toll Highway Comm'n,* 34 Ill.2d 544, 547, 216 N.E.2d 788, 791 (1966))). However, "mere" noise can constitute a "substantial invasion"; the "invasion" of another's land need not be physical. *See City of Chicago v. Reuter Bros. Iron Works, Inc.,* 398 Ill. 202, 206, 75 N.E.2d 355, 358 (1947) ("[A]t common law, mere noise may be of such character as to constitute an actionable nuisance remediable by an action on the case for damages or by injunction."); *Kolstad v. Rankin,* 179 Ill.App.3d 1022, 1033, 128 Ill.Dec. 768, 775, 534 N.E.2d 1373, 1380 (4th Dist.1989) (finding that the sound of automatic weapon fire is actionable as a private nuisance).

The issue of "substantial invasion" is a question of fact. *See Patterson,* 3 Ill. App.2d at 316, 122 N.E.2d at 52. Accordingly, based upon the evidence presented at the hearing, the Court finds that the noise emanating from the Debtor's building constituted a "substantial" invasion of the Zarlengas' interest in the use and enjoyment of their land.

### b. Intentional Invasion

Whether the Debtor's invasion of the Zarlengas' interest in the quiet enjoyment of their land was "intentional" is a closer question. This element concerns the offending landowner's *intent to create the consequences,* not to its *intent to engage in the conduct* that results in those consequences. *See Woods,* 95 Ill.App.3d at 1090, 51 Ill.Dec. at 472, 420 N.E.2d at 1030.

Illinois follows the somewhat lenient definition of "intent" set forth in the Restate-

ment (Second) of Torts § 825 (1979).[6] *See, e.g., Malone v. Ware Oil Co.,* 179 Ill.App.3d 730, 734–35, 128 Ill.Dec. 558, 561, 534 N.E.2d 1003, 1006 (4th Dist.), *appeal denied,* 126 Ill.2d 560, 133 Ill.Dec. 669, 541 N.E.2d 1107 (1989). That is, the offending landowner need not engage in the conduct for the *purpose* of creating the consequences; rather, it is enough that the offending landowner have the *"knowledge that the invasion* of another's interest in use and enjoyment of land *is resulting or is substantially certain to result." Patterson,* 3 Ill.App.2d at 316, 122 N.E.2d at 51 (emphasis added).

In the instant case, the Court finds that this lesser degree of intent existed; although the Debtor did not emit the noise from its building for the purpose of invading the Zarlengas' interest in the use and enjoyment of their land, the Debtor knew as early as June, 1988, that noise from its building was substantially interfering with the Zarlengas' use and enjoyment of their townhome.

### c. Unreasonable Invasion

▮ Finally, with regard to the most difficult issue, the Court finds that the Debtor's invasion of the Zarlengas' interest in the use and enjoyment of their land was "unreasonable."

▮ Like the "substantial invasion" question, the determination of this issue is a question of fact. *See id.* at 316, 122 N.E.2d at 52. Its resolution requires the Court to perform a balancing test: "An invasion is not unreasonable, however, unless the gravity of the harm done to the plaintiffs outweighs the utility of the defendants' business and the suitability of the location of that business." *Woods,* 95 Ill.App.3d at 1090, 51 Ill.Dec. at 472, 420 N.E.2d at 1030; *see also Pasulka v. Koob,* 170 Ill.App.3d 191, 208, 121 Ill.Dec. 179, 190, 524 N.E.2d 1227, 1238 (3d Dist.),

*appeal denied,* 122 Ill.2d 579, 125 Ill.Dec. 222, 530 N.E.2d 250 (1988); *Patterson,* 3 Ill.App.2d at 316, 122 N.E.2d at 51–52. In performing this balancing test, the Court may also consider the ease of abatement of the offensive conduct. *See Woods,* 95 Ill. App.3d at 1090, 51 Ill.Dec. at 472, 420 N.E.2d at 1030 (considering the following factors in that case: "(4) Can the odors and flies be reduced? (5) I modification of the facility practical?"); *see also* note 4 above.

The Zarlengas presented extensive evidence to establish the gravity of the harm done to them. *See* Part III. above. The noise emanating from the Debtor's building profoundly and detrimentally affected their health, their intrafamily relationships, and their ability to enjoy their home. Indeed, the Court has already found that the noise emanating from the Debtor's building constituted a "substantial" invasion of the Zarlengas' interest in the use and enjoyment of their land.

On the other hand, the Debtor's building serves an economically useful purpose in providing 168 apartments for approximately 300 residents. Also, the Debtor properly obtained all permits and licenses required to construct and operate its building. The factors that tip the balance in favor of the Zarlengas are the Debtor's admissions concerning the relative ease with which it could alleviate the noise problem.

The parties participated in several post-petition proceedings before the Board, ultimately resulting in the Board's issuance of an order that the Debtor take specific measures to remedy the noise problem. *See Zarlenga v. Partnership Concepts,* PCB 89–169, at 5–6 (Jul. 30, 1992).[7] The Board based that order on preliminary evidence that the Debtor's cost of abatement would range from

---

6. The Restatement (Second) of Torts § 825, at 117 (1979) states as follows:

   **Intentional Invasion—What Constitutes**
   An invasion of another's interest in the use and enjoyment of land or an interference with the public right, is intentional if the actor
   (a) acts for the purpose of causing it, or
   (b) knows that it is resulting or is substantially certain to result from his conduct.

7. This opinion and the Board's February 27, 1992, opinion, cited below, were not admitted into evidence at the hearing. However, the Debtor included copies of these opinions as exhibits in its objection, and it relied upon facts contained in these opinions to support its objection. Accordingly, the Court treats the information contained in these opinions concerning the Debtor's cost of abatement of the noise as admissions by the Debtor.

$106,600 to $124,600. *See Zarlenga v. Partnership Concepts,* PCB 89–169, at 4–6 (Feb. 27, 1992). Later, the Board amended its order based upon the Debtor's representation that another method of abatement would be some $23,000 cheaper. *See Zarlenga v. Partnership Concepts,* PCB 89–169, at 4 (Jul. 30, 1992).

▆ Also, on October 6, 1993, the Debtor's special counsel filed with this Court a "Status Report" concerning certain noise measurement field tests conducted at One Bloomingdale Place. In this "Status Report," the Debtor's special counsel stated, "the results of [the noise measurement field tests] confirm the efficacy of Debtor's proposed plan for noise reduction." Debtor's Status Report ¶ 1.[8]

In light of these admissions that the Debtor's emission of noise from its building may be abated in an economically efficient manner, the Court finds that the Debtor's invasion of the Zarlengas' interest in the use and enjoyment of their land was unreasonable.

## B. ZARLENGAS' MOTION TO ALLOW CLAIM FOR PURPOSE OF VOTING

▆ Since the Court has overruled the Debtor's objection to the Zarlengas' claim, it is now faced with the task of estimating the amount of that joint claim [9] so that the Zarlengas may vote on the Debtor's Third Plan of Reorganization. *See* § 502(c)(1).[10]

The parties stipulated that the Zarlengas would limit their presentation of evidence at the hearing to a total of $100,000 in damages, itemized as follows: $25,000 for the diminu-

tion in value of the Zarlengas' real property; $25,000 for the diminished use and enjoyment of their property; $25,000 for their diminished quality of life; and $25,000 for their out-of-pocket costs and expenses. Accordingly, in the absence of evidence to the contrary, the Court treats these amounts as ceilings for each of these respective categories of damages.

The rules governing the measure of damages for private nuisance are set forth in *Tamalunis v. City of Georgetown,* 185 Ill. App.3d 173, 183–84, 134 Ill.Dec. 223, 230–31, 542 N.E.2d 402, 409–10 (4th Dist.), *appeal denied,* 128 Ill.2d 672, 139 Ill.Dec. 523, 548 N.E.2d 1079 (1989), as follows:

As determinative of damages recoverable for injury to property, the law of nuisance recognizes two types of nuisances: temporary or permanent. A permanent nuisance is one characterized as continuing indefinitely and the structure constituting the nuisance is a lawful one, or one which the person or entity has a legal right to maintain. ... The measure of damages for a permanent nuisance is the depreciation in the market value of the property injured.

A temporary nuisance is one which is occasional, intermittent, or recurrent and is remediable, removable, or abatable. ... Generally, the measure of damages for a temporary nuisance is the personal inconvenience, annoyance, and discomfort suffered on account of the nuisance.

(Citations omitted.)

▆ Following the *Tamalunis* court's articulation of the rule, as it must, the Court

---

8. This document was not admitted into evidence at the evidentiary hearing. Indeed, it was not filed with the Court until 12 days after the hearing was concluded. However, the Debtor submitted it to this Court in support of its motion to escrow funds to remedy the noise problem, which the Court granted on October 21, 1993. *In re Bloomingdale Partners,* 160 B.R. 93 (Bankr. N.D.Ill.1993). Accordingly, the Court will treat the statements in this document as admissions for the purpose of this related matter.

9. The Zarlengas have treated their claims as a joint claim throughout the proceedings. Accordingly, the Court will do the same.

10. As a matter of procedure, the Court notes that it is allowing the Zarlengas' claim pursuant to § 502(c)(1), not Fed.R.Bankr.P. 3018(a). Rule 3018(a) permits the Court to allow a claim temporarily, notwithstanding an objection to that claim. Since the Court explicitly overrules the Debtor's objection to the Zarlengas' claim, such "temporary" allowance of their claim is not necessary. Instead, the Court allows and estimates the Zarlengas' claim pursuant to § 502(c)(1), which provides, "There shall be estimated for purpose of allowance under this section any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case...."

characterizes the nuisance in this case as temporary because the noise need not continue indefinitely; it is susceptible to remedy or abatement. Also, the Debtor does not have the right to maintain the structure in its current, noisy state; the Board has the power to enjoin the continued operation of the building or to fine the Debtor. 415 ILCS 5/33(b) (1993). *But see O'Brien v. City of O'Fallon*, 80 Ill.App.3d 841, 846, 36 Ill.Dec. 36, 39–40, 400 N.E.2d 456, 459–60 (5th Dist. 1980) (characterizing a nuisance as permanent even though the cause of the nuisance, a sewage overflow valve, was illegal and the nuisance was abatable, because the defendant intended "to continue to maintain and operate the illegal structure.").[11]

Accordingly, the Court must limit its award of damages to "the personal inconvenience, annoyance, and discomfort suffered [by the Zarlengas] on account of the nuisance." *Tamalunis*, 185 Ill.App.3d at 184, 134 Ill.Dec. at 231, 542 N.E.2d at 410; *see also Schatz v. Abbott Labs., Inc.*, 51 Ill.2d 143, 146, 281 N.E.2d 323, 325 (1972) ("[W]hen premises are occupied by the owner who suffers injury by reason of a nuisance, the measure of damages is the injury and annoyance of the plaintiff while occupying the premises....").[12]

Unfortunately, under this measure of damages, "the amount recoverable 'cannot be gauged by any definite rule.'" *Id.* (citing *Illinois Cent. R.R. Co. v. Grabill*, 50 Ill. 241, 246 (1869)). However, some case law does exist to serve as a general guide for the Court.

In a relatively recent case, the plaintiffs in *Statler v. Catalano*, 167 Ill.App.3d 397, 118 Ill.Dec. 283, 521 N.E.2d 565 (5th Dist.), *appeal denied*, 122 Ill.2d 595, 125 Ill.Dec. 237,

530 N.E.2d 265 (1988), sought actual and punitive damages and an injunction on a private nuisance theory. The plaintiffs alleged that the "defendants intentionally deposited rubbish on ... the boundary line between plaintiffs' ... and defendants' property ... and intentionally lowered the lake level contained on plaintiffs' property." *Id.* at 399, 118 Ill.Dec. at 286, 521 N.E.2d at 568. The Illinois appellate court affirmed the jury's award of $55,841 in actual damages and $42,250 in punitive damages, stating, "It cannot be said that the damages awarded in this case are unfair or are unreasonable, nor are the damages so large that it shocks the judicial conscience." *Id.* at 404, 118 Ill.Dec. at 289, 521 N.E.2d at 571. The appellate court also affirmed the punitive damages award, *id.* at 406, 118 Ill.Dec. at 290, 521 N.E.2d at 572, and the issuance of the injunction, *id.* at 411, 118 Ill.Dec. at 294, 521 N.E.2d at 576.

*Wheat v. Freeman Coal Mining Corp.*, 23 Ill.App.3d 14, 319 N.E.2d 290 (5th Dist.1974), was "an action to recover damages for the tortious interference with the quiet use and enjoyment of land owned by the plaintiffs ... resulting from the actions of the defendant ... in operating its coal mine." *Id.* at 15, 319 N.E.2d at 292. The Illinois appellate court 19 years ago found that "the damages [of $12,000] legitimately took into account the extreme discomfort of the plaintiffs and the deprivation of the healthful use and comforts of their home over a three year period." *Id.* at 25, 319 N.E.2d at 299.

Finally, the facts in *Nair v. Thaw*, 156 Conn. 445, 242 A.2d 757 (1968), are remarkably similar to the instant case; a plaintiff filed a lawsuit on a nuisance theory because the noise from the defendant's air-condition-

**11.** The *Tamalunis* court explicitly declined to follow the *O'Brien* court on this point:

> We decline to adopt the Fifth District Appellate Court's analysis in *O'Brien*. In our view, an otherwise lawful structure, such as the municipal sewer system in this case, becomes unlawful when the manner of its operation exceeds the guidelines established for its legal operation. The intent of the owners of such a structure to continue the method of operation is not the proper focal point and cannot negate the fact that the structure is illegally operated.

*Tamalunis*, 185 Ill.App.3d at 186, 134 Ill.Dec. at 232, 542 N.E.2d at 411. In the instant case, there is no evidence that the Debtor intends to continue the nuisance. Indeed, the Debtor has represented to this Court that it intends to abate the nuisance.

**12.** Two of the parties' stipulated categories, "diminished use and enjoyment of property" and "diminished quality of life," fit within the meaning of personal inconvenience, annoyance, and discomfort. Accordingly, the Court will not award more than $50,000 to the Zarlengas.

**112**

ing equipment "injuriously affected her health, made it impossible for her to continue to occupy her home and impaired the value of her property." *Id.* at 447, 242 A.2d at 758. Twenty-five years ago, the Supreme Court of Connecticut affirmed the trial court's award of $3,500 in damages and its issuance of an injunction prohibiting the defendant from operating some of the air-conditioning equipment at night. *Id.* at 452–53, 242 A.2d at 761.

After analyzing these opinions and considering the evidence presented at the hearing in this case, the Court estimates that the Zarlengas are entitled to a damage award of $40,000. The Zarlengas' injuries for personal inconvenience, annoyance, and discomfort were more severe than those suffered by the plaintiffs in *Wheat* ($12,000 award), but less severe than those endured by the plaintiffs in *Statler* ($55,841 award). The Zarlengas' plight was comparable to that of the plaintiff in *Nair* ($3,500 award). Taking into account the effect of inflation since *Nair* and *Wheat* were decided, $40,000 is within the range of judgments affirmed by three appellate level courts.

## V. CONCLUSION

The Debtor's two grounds for objecting to the Zarlengas' claim are without merit. First, although the Zarlengas' proof of claim does not explicitly say that they are relying upon an Illinois common law private nuisance cause of action, their proof of claim meets the requirements of the Code and the Rules. Also, even if their proof of claim were technically deficient, under *Stoecker* they would be permitted to correct that technical deficiency to comply with the Code and the Rules' requirements. Second, the Zarlengas established their common law private nuisance claim at the evidentiary hearing. They proved that they suffered a substantial, intentional, and unreasonable invasion of their interest in use and enjoyment of their land. Accordingly, the Debtor's objection is overruled.

Finally, in response to the Zarlengas' motion to allow their claim for the purpose of voting on the Debtor's plan, the Court analyzed the facts and authorities and concludes that the Zarlengas' claim should be allowed in the estimated amount of $40,000.

An appropriate Order has been entered.