LEON WHEAT et al., Plaintiffs-Appellees, v. FREEMAN COAL MINING COR-
PORATION, Defendant-Appellant.

(No. 73-139;

Fifth District—July 23, 1974.

*Modified upon denial of rehearing October 17, 1974.*

Robert S. Hill, of Benton, for appellant.

Harris and Lambert, of Marion, for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Franklin County in an action to recover damages for the tortious interference with the quiet use and enjoyment of land owned by the plaintiffs, Leon Wheat and Helen Wheat, resulting from the actions of the defendant, Freeman Coal Mining Corporation, in operating its coal mine. Defendant appeals from a judgment in the amount of $12,000 entered on a jury verdict for the plaintiffs.

Plaintiffs own and, during the period covered by this suit, lived on a 37½-acre farm located approximately 2½ miles east of Benton. Plaintiffs' home was described at trial as a small frame house with four rooms and

an unfinished attic. There was no inside plumbing. Plaintiffs raised popcorn on the farm, had owned this tract since 1952, and lived on it up until 1966. This suit is concerned with damages incurred by plainitffs between the years 1963 and 1966.

The defendant operated its Orient No. 5 mine on land west of plaintiffs' home. Operations at the mine began around 1962. Defendant has constructed a pond for use in the washing and separating of impurities from saleable coal. This pond is at the edge of defendant's land and, therefore, in close proximity to plaintiffs' land. Defendant constructed a wall surrounding this pond by piling refuse from its mining operations along the side of the pond.

Plaintiffs allege that the operations of defendant's mine caused large amounts of coal dust and smoke to come onto plaintiffs' property. Plaintiffs allege that this intrusion caused them extensive damage. They allege that the smoke and dust were constant, heavy and annoying, prohibiting them from doing their work at home or from opening their windows; that the dust interfered with their water supply and infested their food, clothing and furniture; and that the dust damaged the exterior of their house, causing it to blacken. Plaintiffs allege that damage was also caused them because water from defendant's pond backed upon their property. This water allegedly contained harmful chemicals and damaged their soil. Plaintiffs say that the retaining wall of defendant's pond contained combustible refuse and that this refuse burned and emitted noxious gases. This emission also damaged plaintiffs in the use of their home and is another element of their claim.

This case was tried before a jury and a verdict was rendered for plaintiffs. Defendant, at the close of the trial, moved for judgment on the evidence as a matter of law. It now appeals from the denial of this motion. Defendant contends that plaintiffs' complaint was insufficient in either the count alleging negligence or the count alleging nuisance. Defendant also objects to errors allegedly committed at the trial: (1) the trial court's ruling on certain evidence; (2) improper instructions to the jury; and (3) the trial court's allowing plaintiffs to amend their theory of damages at the close of their evidence.

■■ Defendant contends that plaintiffs' complaint was insufficient to state a cause of action because it did not allege unreasonableness and intention, two elements essential to the maintenance of an action for nuisance. (Restatement of Torts § 822 (1939).) Defendant says that it was error on plaintiffs' part not to plead these elements. Plaintiffs' second amended complaint alleged that defendant operated a coal mine close to their home. It alleged that, in the operation of this coal mine, defendant erected a processing plant to prepare the coal for market. A large reser-

voir, part of this processing plant, contained contaminated water. Plaintiffs alleged that defendant "caused and allowed" such water to flow onto plaintiffs' land and that the flooding caused damage to them. Plaintiffs also alleged that great quantities of coal dust were emitted from the plant and carried by wind into plaintiffs' property "causing the exterior of the dwelling to become blackened and the paint to peel off, the interior, including the furniture, clothing and food, to become covered by coal dust, the water supply was rendered unfit for use, and the comfort and utility of the plaintiffs' home and the use of it by them has been seriously interfered with, making it difficult to live and enjoy the ordinary comforts of their premises as a dwelling." The second count substantially repeated allegations of damage, claiming that it was caused negligently. It would appear that plaintiffs, in their complaint, stated facts which, if true, would permit a jury to find that intentional and unreasonable damage was caused to plaintiffs by the operation of the coal mine. Defendant protests the sufficiency of the evidence on either count. Leaving that question for further consideration, it appears the plaintiffs have pleaded the elements of nuisance and negligence and, therefore, the pleading was sufficient. It is not necessary to include the words "unreasonable and intentional." In *Feder v. Perry Coal Co.*, 279 Ill.App. 314 (1935), the court considered a complaint in a case involving facts similar to the present case. Holding that the complaint stated a cause of action, the court stated:

> "The declaration alleged plaintiff's possession of his property, the uses he was making of it, the existence of defendant's slag pile, its ignition followed by burning and casting of fumes and gases upon plaintiff's property rendering his habitation uncomfortable, damaging his crops and livestock. By these allegations, plaintiff has alleged facts from which the law gives him certain rights, a transgression of those rights by the defendant and resulting damages. This is all the law requires in pleading." 279 Ill.App. at 318.

The defendant also contends that the trial court erred in striking its "Affirmative Defense #1." Defendant had alleged therein that plaintiffs, by moving into an area known to be rich in coal, and therefore likely to be the site of coal mining activity, had assumed the risk of any damage they might incur from such activities.

■■ It appears from the record that defendant had ample opportunity to present evidence that its coal mine was located in a suitable area for coal mining. In an action for nuisance, suitability of the location for specific operation is a factor to be considered, along with other factors, in determining whether the invasion of plaintiffs' rights was unreasonable. (See Prosser, Law of Torts § 89, at 599-600 (4th ed. 1971).) But, plaintiffs' knowledge of the likely presence of the coal mine would not, of

itself, bar recovery. In *Menolascino v. Superior Felt and Bedding Co.*, 313 Ill.App. 557 (1942), the court held that contributory negligence of the plaintiff in living close to a mattress factory was not a proper issue in a nuisance case. (See also *Johnston v. City of Galva*, 316 Ill. 598 (1925).) Since defendant had opportunity to develop this factor at trial, it was not error to strike it as a special defense, where such knowledge would not necessarily bar plaintiffs' recovery, especially since the operation of the mine commenced after the plaintiffs purchased the property. *Oehler v. Levy*, 234 Ill. 595, 85 N.E. 271 (1908); *Schatz v. Abbott Laboratories, Inc.*, 131 Ill.App.2d 1091, 269 N.E.2d 308 (1971), *rev'd on other grounds*, 51 Ill.2d 143, 281 N.E.2d 323 (1972).

Defendant contends that it is entitled to judgment notwithstanding the verdict, arguing that there was no evidence from which any trier of fact could have concluded that its activities in carrying out its business of coal mining were unreasonable.

■■ The same standard should be applied when determining whether a verdict should be directed or a judgment *non obstante veredicto* entered. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504 (1967).) That standard permits the trial court to direct a verdict or enter a judgment *non obstante veredicto* "only in those cases in which all of the evidence, when viewed in its aspects most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504, 513 (1967).

At the outset, it should be emphasized that this was not a suit for an injunction restraining defendant's activities. In such cases, a stronger showing will be required of plaintiffs with regard to the unreasonableness of defendant's activities and the harm suffered by plaintiffs. (Restatement of Torts § 822 (1939).) Our courts have adopted the Restatement approach to the law of nuisance. *Patterson v. Peabody Coal Co.*, 3 Ill.App.2d 311 (1954). See also *Chicago North Shore Street Ry. Co. v. Payne*, 192 Ill. 239, 61 N.E. 467 (1901).

Defendant contends that there was no evidence that indicated that its conduct was intentional and unreasonable under the test embraced in section 88 of the Restatement of Torts. "Intentional" for purposes of liability under section 822 is defined as including knowledge that the invasion of another's interest is resulting or substantially certain to result. There is support in the record that defendant would know that some dust and smoke would be carried over to neighboring lands. Defendant's witness, Harry Treadwell, testified that the defendant had been informed of the damage being done to plaintiffs by the operations of the mine.

The determination of whether defendant's conduct has been unreason-

able is a question particularly suited for a jury, especially where there is evidence that damage has occurred. Plaintiffs' witnesses testified that some smoke and coal dust were constantly emitted from the mine and entered into plaintiffs' house. Anna Butler, a witness for plaintiffs, testified "The smoke, the dirt, the dust, the stink * * * was worse than rotten eggs. * * * You come up that highway, comin' from Benton, Illinois, down through the bottoms, why, you couldn't even stand it; you had to put the windows up in your car."

Margaret Hall, a neighbor of plaintiffs, testified as to the blackening effect the smoke and dust had on plaintiffs' house.

Stephen Hannaford Moore, also a neighbor, testified as to the deterioration of the house, and burning of the gob pile (refuse bounding pond), that "it was just smoke and flame and burnin' continually." He also testified as to the heavy quantities of smoke and disagreeable odor coming from the mine.

Alfred L. Caskey, plaintiffs' expert witness, an associate professor of chemistry and biochemistry at Southern Illinois University at Carbondale, testified that his examination revealed hydrogen sulfide in plaintiffs' house paint and indicated that the damage to the exterior had been caused by emissions from the operation of the coal mine.

It is apparent from this evidence elicited from disinterested witnesses that plaintiffs suffered certain unreasonable harm. It is proof which, when viewed in its aspects most favorable to the plaintiffs, tends to prove the charge of their complaint. According to the *Pedrick* standard, unless such evidence is of dubious probative value *and* contrary to the overwhelming majority of the evidence, a motion for judgment notwithstanding the verdict is properly denied.

Defendant relies heavily on *Gardner v. International Shoe Co.*, 319 Ill.App. 416, 49 N.E.2d 328 (1943), *aff'd*, 386 Ill. 418, 54 N.E.2d 482. In that case, judgment for the plaintiffs was reversed where it appeared that the odors emanating from defendant's tannery were necessarily incident to its operation, that the tannery was properly operated, and that plaintiffs were not substantially injured. It appeared that disinterested witnesses had not found the odors particularly offensive. The appellate court said, "In the instant case, we have nothing more than unpleasant and disagreeable odors, and those only occasionally perhaps sickening to a few who seem to be unduly sensitive or might we say allergic to such smells." (319 Ill.App. at 428.) This situation is distinguished from the instant case where plaintiffs' evidence amply supported allegations of continuing offensive odors and physical damage to their home.

The instant case is similar to *Patterson v. Peabody Coal Co.*, 3 Ill. App.2d 311, 122 N.E.2d 48 (1954). This was an action by a farmer based

on private nuisance in the operation of a coal washer and drier in a mining community. The washer and drier were located about one-quarter of a mile from plaintiff's premises. The court there held that where evidence established a substantial deposit of coal dust on plaintiff's premises the trial court was correct in submitting the question of nuisance to the jury.

The court in *Patterson* said:

"Turning now to the case at bar we think it is distinguishable from *Gardner* case on the question of the substantiality of the invasion. Here we have a physical substance deposited on plaintiff's premises in quantity and with frequency. On the other hand we have no doubt of the suitability of the location of defendant's business. It is in a mining community and the refining of the product is necessary to market it. Nor do we have any question of the utility and importance to the public of coal mining and processing. The deposit of dust on plaintiff's premises however seems to be in sufficient quantity, as well as duration, to justify a submission of the case to a jury." (3 Ill.App.2d at 317.)

It appears that these circumstances are indistinguishable from those of the present case. The court in *Patterson* apparently laid great stress on the fact of physical injury to plaintiff's premises. The same type of physical injury is present here and makes this case proper for jury determination. The fact of physical injury, amply attested to by disinterested witnesses, makes the issue of whether or not the invasion was unreasonable a jury question.

■■ Defendant cites *Patterson* as holding that a burning gob pile is not "intentional" as a matter of law. The court in *Patterson* found that this was not "intentional" because it was caused by spontaneous combustion, and, therefore, was not certain to occur. The evidence showed that defendant had done all in its power to stop the burning and that such burning was an occasional occurrence, causing no substantial injury to plaintiff. (3 Ill.App.2d 311, 317.) It does not appear that the *Patterson* case was holding, as a matter of law, that a burning gob pile may never constitute a nuisance. The court seems to be holding that, under the conditions there present, it was not an intentional nuisance. Therefore, a similar holding is not required where, as in the instant case, defendant knew of the burning and did nothing to stop it or where injury was more substantial to plaintiff. Witnesses for plaintiffs here testified that the burning was constant and the odors emitted were severe. It may be noted that defendant's engineer testified that defendant knew spontaneous combustion is likely to result from a gob pile, and, nevertheless, placed gob near plaintiffs' home. The issue of whether defendant's actions constituted

an intentional and unreasonable invasion of plaintiffs' enjoyment of their home was properly left to the jury,

In *Feder v. Perry Coal Co.*, 279 Ill.App. 314 (1935), the court held that one has a natural right to have the air over his premises reasonably free from impurities and while defendant has a right to use his property in such a way as he may choose, he has no right to substantially injure plaintiff by casting gas, fumes, and dust on his premises.

■■ The issue, as defendant correctly points out, is whether the injury caused to plaintiffs by the alleged nuisance is intentional and unreasonable, weighing the gravity of the injury to plaintiffs against the utility of defendant's conduct. In its opening statement, defendant admitted that some smoke and dust are natural incidents of coal mining and they are certain to occur. This would seem to indicate that defendant's conduct was intentional within the meaning of the Restatement rule. Since plaintiffs introduced evidence of substantial injury, it became a jury question as to whether or not the injury was unreasonable. There was ample proof to sustain the jury's finding for plaintiffs. Therefore, a judgment notwithstanding the verdict was improper and defendant's motion was properly denied.

Defendant alleges that other errors were committed at the trial. It objects to: (1) admission of certain evidence; (2) instructions to the jury; and (3) plaintiffs' amendment to its pleading at the end of the case.

Defendant objects first to abridgement of its inquiry concerning employment of plaintiff Leon Wheat, on two grounds: (1) it limited defendant of its proof regarding the amount of time plaintiff actually spent at home, and therefore defendant was denied relevant information regarding the extent to which plaintiff was actually damaged in the use and enjoyment of his home; and (2) information regarding plaintiff's employment was relevant to his credibility.

Aside from the trial court's sustaining plaintiffs' objection with regard to the inquiry into plaintiff Leon Wheat's employment, defendant was free to question Leon as to how much time he spent on the premises. Since it did not choose to do so at trial, defendant cannot now complain.

■■ On cross-examination, the opponent is permitted only to inquire as to matters raised on direct examination. Plaintiff's employment as a bartender was not at issue and had no bearing on the case. The matter of plaintiff's employment was not raised on direct examination. The trial court did not err in sustaining plaintiffs' objection.

Defendant objects to the exclusion of its evidence regarding the value of plaintiffs' premises. The measure of damages for nuisance is not the fair market value of plaintiffs' land, but rather the damages are measured

by the discomfort and the deprivation of the healthful use and comforts of the plaintiffs' home. (*Schatz v. Abbott Laboratories, Inc.,* 51 Ill.2d 143, 281 N.E.2d 323 (1972).) There is no fixed rule as to damages in such an action. The amount awarded must be left to the sound discretion of the jury in view of the fact of a particular case. (*Chicago-Virden Coal Co. v. Wilson,* 67 Ill.App. 443 (1896).) Market value is not the proper measure of damages in such an action. (*Kulgel v. Village of Brookfield,* 322 Ill.App. 349, 54 N.E.2d 92 (1944).) Since the measure of damages was not the fair market value of the land, the court did not err in excluding such damages. *Cook v. City of Du Quoin,* 256 Ill.App. 452 (1930); *Racine v. Catholic Bishop of Chicago,* 290 Ill.App. 284, 8 N.E.2d 210 (1937).

Defendant cites three cases as authority for its position that it was error to exclude testimony regarding the fair market value of plaintiffs' land. (*N. K. Fairbank Co. v. Nicolai,* 167 Ill. 242, 47 N.E. 360 (1897); *Bailey v. Heintz,* 71 Ill.App. 189 (1897); *Wanless v. Peabody Coal Co.,* 294 Ill.App. 401, 13 N.E.2d 996 (1938).) However, since *Bailey v. Heintz* and *Wanless v. Peabody Coal Co.* were not actions based on nuisance they are not in point. Similarly, *N. K. Fairbank Co. v. Nicolai* is not favorable to the defendant. In that case the court would *not* permit defendant to introduce evidence regarding the depreciation in fair market value because the measure of damages was plaintiff's discomfort and deprivation of the healthful use and control of his home.

It does not appear that defendant has offered any authority for its proposition that it was error to exclude evidence of the fair market value of plaintiffs' premises. In this action for nuisance, the great injury is in the physical discomfort and deprivation of the comfort of a home. The determination of damages in such a case would be particularly suitable for determination by a jury and it was not error to leave the question to them.

■■ Defendant next objects to the admission into evidence of certain photographs taken of plaintiffs' premises. Defendant believes that adequate foundation was not laid for their admission because no specific date was established for the taking of these photographs. Plaintiffs Leon and Helen Wheat testified that the photographs accurately portrayed their home. It is evident that these witnesses testified from personal knowledge. In *Brennan v. Leshyn,* 51 Ill.App.2d 132, 201 N.E.2d 167 (1964), this was held to be an adequate foundation for the admission of photographs. It is not necessary that the witness know anything of the time or condition of the taking. All that is required is personal knowledge of the scene or object and testimony that the scene is correctly portrayed by the photograph.

Defendant cites *Williams v. Stewart,* 2 Ill.App.3d 528, 275 N.E.2d 659 (1971), in support of its contention that the photographs were inadmissible. This case concerned a photograph of a car taken at some indeterminate time after an accident. It appears that no specific foundation was laid. There was no indication that any witness had testified as to the accuracy of the photograph. In this case, the date of the photograph became fairly critical in determining what damage had actually occurred at the time of the accident. *Williams* can be distinguished from the instant case where plaintiffs testified that photographs accurately represented their home before and after the damage, and where the date of the photographs is not critical. The photographs were admissible.

Defendant objects to certain instructions to the jury with regard to negligence and intent, but it fails to specify the instructions. Its objection appears to be directed not so much at the content of the instructions, but rather at the submission of the issues of intent and negligence to the jury, which we have already determined to be proper. Plaintiffs' instructions 2 and 5, defining intent and negligence, accurately state the applicable law.

Defendant objects to the plaintiffs' amending its complaint at the close of the plaintiffs' evidence. The amendment changed the complaint from a claim for property damage to a claim for damage in the use and enjoyment of their home. Defendant claims that it was prejudiced by this because it had to change the whole nature of its proof.

After the taking of numerous interrogatories and depositions and the granting of motions to dismiss and the allowance of various amendments, the parties went to trial on the second amended complaint as amended. In that complaint as amended Count I (the so-called nuisance count) alleged:

"12. By reason of the foregoing, the plaintiffs have been damaged in the sum of $20,000, to the crops and to the land by reduction before and after."

and Count II (the so-called negligence count) alleged:

"13. By reason of the foregoing, the plaintiffs have been damaged in the sum of $20,000, to the crops and to the land by reduction before and after."

The case was tried principally on the theory of damages to the crops and the land, although there was some evidence to support the allegation found in one paragraph of each of the counts which were:

"Great quantities of coal dust and other materials have been and are emitted into the atmosphere from the coal mine operation and conveyed by prevailing winds to and upon the premises of the plaintiffs, causing the exterior of the dwelling to become blackened

and the paint to peel off, the interior, including the furniture, clothing, and food, became covered by coal dust, the water supply was rendered unfit for use, and *the comfort and utility of the plaintiffs' home and the use of it by them has been seriously interfered with, making it difficult to live and enjoy the ordinary comforts of their premises as a dwelling.*" (Emphasis supplied.)

The evidence which could be said to support the allegations of damage to the use, comfort and utility of the home and discomfort to the plaintiff occupants, such as dust and the stench of the gaseous fumes which discolored the paint and corroded the screens went in unobjected to, since it related to physical damage. There, of course, was other evidence of crop damage and other physical damage which did not go to any interference with the use and enjoyment of the house. The evidence of physical damage obviously would not support very much more than the cost of actual repair proven (approximately $1600). The plaintiffs had alleged damages from flooding, destruction of crops and the rendering of the soil untillable and unusable for agricultural purposes, but offered so little testimony supporting such allegations that they chose to abandon them, after all their evidence was in and sought to amend the complaint by striking 12 and 13 (above set forth) and inserting in lieu thereof the following:

"By reason of the foregoing, the plaintiffs, Leon Wheat and Helen Wheat, have been damaged in the use and enjoyment of their home and land and plaintiff Leon Wheat has been damaged to the extent of the reasonable cost of repairs to the house on said property."

The court over the objection of defendant granted leave to make the amendment. The defendant then sought a continuance and an opportunity to present evidence against the damage to use and enjoyments. No motion was made to strike the evidence of crop damage or the evidence of damage to the land itself. Defendant contends that the court, by denying the continuance after allowing the amendment which completely changed the theory of damages, effectively deprived the defendant the right to defend on the new theory.

■■ The trial court has broad discretion with respect to the allowance of amendments to pleadings prior to the entry of final judgment. (Ill. Rev. Stat. 1971, ch. 110, par. 46; see also *Austin Liquor Mart, Inc. v. Department of Revenue,* 51 Ill.2d 1, 280 N.E.2d 437 (1972).) Although the timeliness of a proposed amendment to pleading or the diligence of a party proposing an amendment may affect the issue of prejudice (*Able v. Pure Oil Co.,* 8 Ill.App.3d 558, 290 N.E.2d 331 (1972)), when, as in the instant case, it appears from the record that the defendant was at all times

·apprised of the nature of plaintiff's case, and the proof thereto, the trial court did not abuse its discretion in allowing plaintiffs to amend their pleadings to make the allegations conform to the proof (*Williams v. Stewart*, 2 Ill.App.3d 528, 275 N.E.2d 659 (1971)). From the record we are unable to say that there was an abuse of discretion in denying the request for continuance.

Defendant's final contention relates to the excessiveness of the damages awarded. However, the amount awarded must be left to the sound discretion of the jury. (*Chicago-Virden Coal Co. v. Wilson*, 67 Ill.App. 443 (1896); *Cook v. City of Du Quoin*, 256 Ill.App. 452 (1930).) Defendant argues that the damages were nearly twice the fair market value of the house and that a brand new paint job and inside decoration would only involve $1600. But the damages legitimately took into account the extreme discomfort of the plaintiffs and the deprivation of the healthful use and comforts of their home over a 3-year period. We cannot now say that the jury's assessment of the damages was excessive.

Accordingly, the judgment of the trial court is affirmed.

G. MORAN, P. J., and CREBS, J., concur.