JOHN GILMORE *et al.*, Plaintiffs-Appellants, v. STANMAR, INC., *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—92—1191

Opinion filed April 22, 1994.—Rehearing denied May 24, 1994.

William & Marcus, Ltd., of Chicago (John F. Dziedziak and Michael Fries, of counsel), for appellants.

Johnson & Bell, of Chicago (Jack T. Riley, Jr., Robert M. Burke, Thomas H. Fegan, and Mindy Kallus, of counsel), for appellee Safway Steel Products.

Thomas L. Aries, of Chicago, for appellee Stanmar, Incorporated.

PRESIDING JUSTICE EGAN delivered the opinion of the court:
The plaintiffs, John Gilmore (John) and his wife, Kathleen Gilmore (Kathleen), appeal from an order granting certain defendants' motion to dismiss counts III, IV, V and VI of their complaint pursuant to section 2—615 of the Code of Civil Procedure. (Ill. Rev. Stat.

1989, ch. 110, par. 2—615.) John sued for personal injuries and Kathleen sued for loss of consortium. The defendants involved in this appeal are Stanmar, Inc. (Stanmar), and Safway Steel Products (Safway). Counts III and IV allege negligence; counts V and VI allege violation of a statute and common law nuisance.

The allegations of the complaint, which must be taken as true at this juncture, are as follows: John was driving southbound on Wells Street in Chicago on November 22, 1989, when he collided with a police car driven by Chicago police officer John Reed. Reed was driving eastbound on Walton Street; he intended to turn left onto Wells Street and drive north. Reed entered the intersection of Wells and Walton Streets knowing that his vision of the southbound lanes of traffic along Wells Street was partially obscured. There is a stop sign on Walton Street where it intersects with Wells Street; Reed failed to obey this stop sign. Reed and John collided in the intersection of Wells and Walton Streets. John suffered serious injuries and is a quadriplegic as a result of the accident.

Stanmar and Safway owned and were in charge of the erection, construction and repairs of a pedestrian canopy located alongside and abutting the sidewalk along the west side of Wells Street between Walton Street to the south and Oak Street to the north. Stanmar and Safway maintained and checked the progress of the construction work involving the canopy and had the authority to stop the work in the event the work was being performed in a dangerous manner. The canopy was 9 feet 8 inches high and extended 6.1 feet into the southbound lane of Wells Street. The canopy was located 81 feet north of the center of Walton Street.

The canopy interfered with the use by motorists of Walton and Wells Streets by obstructing motorists' movement on the highways because it partially obscured their vision ahead and of the southbound traffic on Wells Street and of the eastbound traffic on Walton Street. Count III alleged that the canopy intruded over six feet into the southbound lanes of traffic on Wells Street, thereby preventing John from taking evasive action and swerving his vehicle to the right to avoid the collision with another vehicle. Count IV was Kathleen's loss of consortium.

Count V involved John's claim for injuries and asserted that the design, erection, construction and placement of the canopy constituted a significant and unreasonable interference with public safety and the common public right to use the highway and thereby constituted a public nuisance. The count concluded that the design, construction and maintenance of the canopy violated section 9—117 of the Illinois Highway Code (Ill. Rev. Stat. 1985, ch. 121, par. 9—117),

and thereby constituted a public nuisance. As a proximate result of the improper use of the canopy, John's motor vehicle collided with the motor vehicle operated by Reed, in part because the canopy's intrusion into the southbound lanes of traffic along Wells Street deprived John of the opportunity to take evasive action and swerve to the right and avoid the collision with another vehicle. Count VI involved Kathleen's loss of consortium and repeated the allegations of count V.

Safway filed motions under sections 2—615 and 2—619 of the Code of Civil Procedure to dismiss the complaint. Stanmar later joined in both motions. Safway attached a City of Chicago "Construction Authorization and Inspection" form for the canopy to its section 2—615 motion. Safway and Stanmar argued that this "permit" expressly allowed the canopy placement and construction. The section 2—619 motion contained several exhibits, including the permit. Judge Thomas Hoffman allowed the plaintiffs' motion to strike the permit from the section 2—615 motion and stayed his decision regarding the section 2—619 motion until after a hearing had been conducted on the section 2—615 motion.

Judge Steven Schiller heard the defendant's section 2—615 motion. He held that the complaint failed to allege facts which would support a finding that the injuries suffered by John were proximately caused by any acts of negligence on the part of the defendants.

The rules governing motions to dismiss complaints have been repeated so often citation is unnecessary: The court must determine the legal sufficiency of a complaint taking as true all well-pleaded facts and the inferences to be drawn from those facts. Pleadings are to be liberally construed, and a pleader is not required to set out his evidence but only the ultimate facts to be proved. A pleading may not be dismissed unless it clearly appears that no set of facts can be proved which will entitle the plaintiffs to recover.

A section 2—615 motion attacks only the legal sufficiency of the complaint on its face. Affirmative matter outside the face of the complaint may not be asserted in a section 2—615 motion. (*Curtis v. County of Cook* (1982), 109 Ill. App. 3d 400, 440 N.E.2d 942.) For that reason, Judge Hoffman properly struck the permit from the defendants' section 2—615 motion. We reject the defendants' attempt to rely on the permit and other affirmative matters in this court to sustain the order dismissing pursuant to section 2—615.

Counts III and IV involve a general negligence claim. To state a cause of action for negligence, a complaint must "allege facts sufficient to show the existence of a duty, a breach of that duty, and injury to the plaintiff which is proximately caused by that breach."

(*Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535, 542, 582 N.E.2d 108.) We disagree with the plaintiffs' contention that the only issue before us is whether the complaint properly pleaded proximate cause. We agree with the defendants that, although the judge based his decision on proximate cause, we must still decide whether the complaint alleges the existence of a duty on the part of the defendants to the plaintiff. We will first address the issue of duty.

Whether a duty exists is a question of law, and depends upon whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff. (*Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 566 N.E.2d 1365.) Generally, "[i]n considering whether a duty exists in a particular case, a court must weigh the foreseeability that defendant's conduct will result in injury to another and the likelihood of an injury occurring, against the burden to defendant of imposing a duty, and the consequences of imposing this burden." *Ziemba*, 142 Ill. 2d at 47.

The defendants rely on four cases in support of their argument that the defendants owed no duty to the plaintiffs: *Ziemba v. Mierzwa* (142 Ill. 2d 42); *Cross v. Moehring* (1989), 188 Ill. App. 3d 830, 544 N.E.2d 1259; *Manning v. Hazekamp* (1991), 211 Ill. App. 3d 119, 569 N.E.2d 1168; and *Esworthy v. Norfolk & Western Ry. Co.* (1988), 166 Ill. App. 3d 876, 520 N.E.2d 1044.

In *Ziemba*, a dump truck exiting the defendant's driveway negligently did not stop at the end of the driveway and hit the plaintiff, who was riding a bicycle on the street. The plaintiff alleged that the defendant had a duty to trim the vegetation on his land, which was near his driveway, so that the driveway was visible to travelers on the street. The supreme court reviewed the Restatement (Second) of Torts and Illinois law on "landowners' duties toward travelers on adjacent highways" and held that "landowners do not owe a duty to maintain *their property* in such a way that it does not obstruct the view of travelers on an adjacent highway." (Emphasis added.) *Ziemba*, 142 Ill. 2d at 51.

In *Cross*, the defendant placed an advertising sign on land near an intersection of two roads. The plaintiff's complaint alleged that the sign blocked her view of traffic at the intersection, thus proximately causing her collision with another car. The appellate court explained that there is no duty in Illinois to insure motorists' views of other traffic at intersections so long as "the visibility of the traffic controls has not been obstructed." (*Cross*, 188 Ill. App. 3d at 832.) Because the *Cross* advertisement did not block any traffic control signals, the court held that the complaint failed to state a cause of

action. Further, the court refused to impose a duty on the defendant which could have far-reaching consequences for "urban landowners who have erected buildings at intersections right up to their lot lines." *Cross*, 188 Ill. App. 3d at 832.

In *Manning*, the plaintiff alleged that she was injured because an approaching driver's view of her motorcycle was obscured by cars a city allowed to park on the street. The plaintiff sued the city, arguing that the city's act of allowing cars to be parked where they could obscure motorists' views was negligence. The appellate court affirmed an order granting the city's motion for summary judgment. The appellate court held that the city had no duty to keep cars from being parked along the street where "there was a clearly visible, properly maintained traffic signal plainly observable to all drivers concerned." *Manning*, 211 Ill. App. 3d at 124.

In *Esworthy*, the appellate court held that the defendant was not liable for obstruction of visibility of a railway crossing which was caused by trees growing on property owned or occupied by the defendant so long as visibility of traffic controls was not also obstructed.

A controlling distinction in each of those cases is the fact that the obstruction which caused the accident was on land owned or lawfully occupied by the defendant.

The plaintiffs have cited *King v. Swanson* (1919), 216 Ill. App. 294, *Donovan v. Raschke* (1969), 106 Ill. App. 2d 366, 246 N.E.2d 110, and *McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill. App. 3d 345, 272 N.E.2d 369.

In *King*, the plaintiff was injured when she slipped and fell on the sidewalk in front of the defendant's business. The defendant operated a laundry, and large baskets filled with clothing were dragged across the sidewalk which caused part of the sidewalk "to be very slippery and dangerous." (*King*, 216 Ill. App. at 296.) The *King* court explained that "[t]he sidewalks are part of the street" and that "[t]he streets of a city from side to side and from end to end belong to the people, and they primarily have the right to the free and unobstructed use thereof." (216 Ill. App. at 298.) The court held that the injury was brought about by reason of the fact that the defendant used the sidewalk in the conduct of his personal business and therefore he was responsible for the dangerous condition which he created. According to the *King* court, "abutters upon the street may use the sidewalk in front of their premises," but "where an abutter does so, it is his duty to see that such use does not make the sidewalk dangerous for persons rightfully using it." 216 Ill. App. at 298.

In *Donovan*, the plaintiffs were injured by a roll of wire mesh placed on a sidewalk by workers repairing the defendants' abutting

building. The trial judge directed a verdict in favor of the building owners. The appellate court reversed and remanded, explaining: "An owner of property which abuts a public sidewalk owes a duty to keep the sidewalk free from any condition which may create a danger or a hazard to persons lawfully upon the street." *Donovan*, 106 Ill. App. 2d at 369-70.

The *King* rule has been incorporated in Illinois Pattern Jury Instructions, Civil, No. 135.01 (1968) (IPI Civil), which was discussed in *McDonald v. Frontier Lanes, Inc.* In *McDonald*, the court explained that the rule applies not only to a property owner, but also to anyone occupying land abutting a sidewalk or street. (*McDonald*, 1 Ill. App. 3d at 352.) In *McDonald*, the plaintiff was injured by a hole in the parkway between the curb and sidewalk in front of the defendant's parking lot. The hole was created when the defendant ran a natural gas line under the sidewalk and parkway and into his business. The defendant argued that, because the parkway land was owned by a city, he had no duty to the plaintiff. The appellate court disagreed, explaining that the jury properly received IPI Civil No. 135.01 instructing them that the defendant owed a duty of reasonable care to the plaintiff if he used the parkway and sidewalk for his own business purposes. The court concluded that the jury properly found the defendant liable.

The validity of *King, Donovan,* and *McDonald* was recently reaffirmed in *Repinski v. Jubilee Oil Co.* (1980), 85 Ill. App. 3d 15, 405 N.E.2d 1383. The *Repinski* court discussed *King, Donovan* and *McDonald,* although it held that the rule did not apply because the *Repinski* defendant had not made any special use of the sidewalk or street for business or other purposes. (85 Ill. App. 3d at 22.) Nonetheless, the court explained that, where a party performs an "affirmative act to assume the use of the sidewalk or other area for his own business purposes" and creates a "condition which interfere[s] with the customary and regular use" of that area, Illinois courts will "impose a broader duty of reasonable care" on that party. 85 Ill. App. 3d at 23.

■ We agree with the plaintiffs that the duty to use reasonable care when taking the sidewalk for business purposes extends also to a taking of part of the street, and that by building over the public sidewalk and street for their own business purposes, the defendants subjected themselves to the duty to act with reasonable care toward anyone lawfully on the street.

Occasional or only partial use of the sidewalk area was sufficient for the courts to find that the defendants were using the street for business purposes in *King, Donovan* and *McDonald.* Here, the

plaintiffs allege an even more affirmative use by the defendants, whose business actions allegedly take the sidewalk and six feet of Wells Street at all times of the day. These allegations, as well as the allegations that the canopy interfered with John's ability to swerve and avoid the accident, must be taken as true for the purposes of a section 2—615 motion and are sufficient to allege a duty of reasonable care owed to the plaintiffs. As the *Donovan* court noted, this is not an unlimited duty requiring the defendants to insure the plaintiffs against any contingency, but it is the duty of reasonable care articulated in *King*. Whether the defendants breached this duty is a question which should be left to a jury. *Johnson v. Hoover Water Well Service, Inc.* (1982), 108 Ill. App. 3d 994, 439 N.E.2d 1284.

We turn now to the issue of proximate cause. The proximate cause of an injury is a cause "which produces the injury through a natural and continuous sequence of events unbroken by any effective intervening cause." (*Novander v. City of Morris* (1989), 181 Ill. App. 3d 1076, 1078, 537 N.E.2d 1146.) Proximate cause is almost always a question of fact, and may only be determined as a matter of law "where it is apparent from the undisputed facts that only one conclusion can be drawn." (*Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 90, 508 N.E.2d 1201.) There can be more than one proximate cause of an accident (*Rosenberg v. Packerland Packing Co.* (1977), 55 Ill. App. 3d 959, 370 N.E.2d 1235), and "a new intervening cause does not necessarily relieve one of responsibility for a negligent act when the intervening cause of the injury is of such nature as could reasonably have been anticipated" (*Lindenmier*, 156 Ill. App. 3d at 90). The defendants argue that the canopy was only a condition by which the injury was possible, relying on *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 45 N.E.2d 665.

Contrary to the defendants' assertions, the complaint specifically alleges that the canopy was 81 feet from the center of Walton Street. It also specifically alleges that the canopy obstructed John's movement on the highway because it partially obscured the vision of motorists on Walton Street and on Wells Street and that the placement of the canopy prevented John from "taking evasive action and swerving his vehicle to the right" to avoid the accident. The issue before us, therefore, is whether these facts, if true, allege proximate cause. We conclude that they do.

In *Lemings v. Collinsville School District Number Ten* (1983), 118 Ill. App. 3d 363, 454 N.E.2d 1139, a young plaintiff was injured when she crossed the street near the defendant's large dumpster and was hit by a car. She alleged that the dumpster blocked the driver's view of the school crossing she was using, and thus was one proximate

cause of the accident. The defendants argued that the dumpster was only a condition which made the accident possible, and that the only proximate causes of the accident were the plaintiff's own negligence and that of the driver who struck the plaintiff. The trial judge granted the defendant's motion to dismiss the complaint.

The appellate court reversed and remanded. The court rejected the defendant's argument that the dumpster was merely a condition, and held that the complaint pleaded sufficient facts which, if proved at trial, could permit a jury to find that the dumpster was one proximate cause of the injuries.

In the case before us, the complaint alleged that the defendants failed to exercise reasonable care in the placement of the canopy and that the canopy intruded over six feet into the southbound lanes of traffic on Wells Street, obstructing John's vision and preventing him from taking evasive action and swerving his vehicle to avoid the collision with another vehicle. We believe that, under the rules calling for liberality in the interpretation of pleadings and for the acceptance of all reasonable inferences in favor of the party opposing a motion to dismiss, those allegations sufficiently allege that the placement of the canopy proximately caused the accident. The trial judge specifically addressed one part of the pleadings when he said that the plaintiffs had "generally asserted that a portion of the roadway was unavailable [for the plaintiffs] to swerve; but there is nothing in [the complaint] that asserts the obstruction was in a position where it could have made any difference." We disagree with the trial judge's conclusion; we believe that to require the plaintiffs to plead more is to require the plaintiffs to plead evidence rather than ultimate facts. For these reasons, we hold that the trial judge improperly dismissed counts III and IV.

Counts V and VI of the complaint are based on section 9—117 of the Highway Code and on the general law of public nuisance. Section 9—117, which is labeled "Injuring or Obstructing Highways," provides:

"If any person injures or obstructs a public highway *** without the permission of the highway authority having jurisdiction over such highway, he shall be guilty of a petty offense and fined for every such offense not less than $10 nor more than $100." Ill. Rev. Stat. 1989, ch. 121, par. 9—117.

The plaintiffs argue that this section creates a private right of action for its violation and that they are members of the class the legislature intended to protect with section 9—117.

Both sides have argued extensively on the question of whether the statute creates a private cause of action. The only case which

addressed the issue is *Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 91, 523 N.E.2d 594, in which the appellate court said that under the "circumstances" present in that case the statute could not be construed "in this instance as providing the plaintiffs with a private right of action in tort." The plaintiffs seek to distinguish *Swett* factually. We conclude that we need not address this issue because we agree with the defendants that the plaintiffs have failed to allege that the canopy was placed on the street without the permission of the highway authority having jurisdiction over such highway, which is one of the elements of the offense as recited in the statute itself. For this reason we judge that the plaintiffs failed to allege a cause of action based on the statute.

The plaintiffs also argue that counts V and VI state a cause of action for public nuisance under sections 821B and 821C of the Restatement (Second) of Torts. They argue that section 821C and part of section 821B have been implicitly adopted in Illinois by cases involving completely different causes of action.

In 1974, two Illinois Appellate Court cases made it clear that Illinois common law nuisance parallels the nuisance law outlined in the Restatement. First, in *Wheat v. Freeman Coal Mining Corp.* (1974), 23 Ill. App. 3d 14, 18, 319 N.E.2d 290, the court cited Illinois precedent beginning in 1901 to support its determination that: "Our courts have adopted the Restatement approach to the law of nuisance." Next, the court in *City of Chicago v. Commonwealth Edison Co.* (1974), 24 Ill. App. 3d 624, 631, 321 N.E.2d 412, cited the draft that became section 821B for the rule that "[a] public nuisance is an unreasonable interference with a right common to the general public." Similarly, in language echoing section 821B, the supreme court recently explained: "[A] public nuisance is the doing of or the failure to do something that injuriously affects the safety *** of the public ***." (*Village of Wilsonville v. SCA Services, Inc.* (1981), 86 Ill. 2d 1, 21-22, 426 N.E.2d 824.) The *Village of Wilsonville* court additionally noted that "nuisance is remediable by injunction or a suit for damages." 86 Ill. 2d at 22.

The defendants argue that the obstruction alleged in the Gilmores' complaint is not a common law nuisance because it is not considered a nuisance by any statute. We reject this argument for two reasons: (1) there is a statute declaring highway obstruction to be a public nuisance; and (2) there is established common law making highway obstruction a public nuisance, and that law applies regardless of the statute. First, obstructing streets is a statutory nuisance under "An Act to revise the law in relation to criminal jurisprudence" (the Public Nuisance Act or Act) (Ill. Rev. Stat. 1989,

ch. 100¹/₂, par. 26). Section 221(5) of the Act declares that it is a public nuisance "[t]o obstruct or encroach upon public highways, private ways, streets, [and] alleys." Ill. Rev. Stat. 1989, ch. 100¹/₂, par. 26(5).

■ Further, "[b]oth at common law and under a statute declaratory of the common law, an *** obstruction or encroachment upon a public highway [can] constitute[ ] a public nuisance." (32 Ill. L. & Prac. *Roads & Bridges* § 111, at 272 (1957).) The Public Nuisance Act is simply a declaration of the common law. (*Town of Manteno v. Surprenant* (1918), 210 Ill. App. 438; 29 Ill. L. & Prac. *Nuisances* § 4, at 5 (1957).) The Act "does not displace common law actions," and "the extent of the concept of public nuisance is not limited to those activities the legislature has declared public nuisances." (*City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 303, 438 N.E.2d 159.) In fact, "there exists a common law right of action to abate a public nuisance independent of any statutory right." (*Village of Bensenville v. Botu, Inc.* (1976), 39 Ill. App. 3d 634, 636, 350 N.E.2d 239; see also *Festival Theatre*, 91 Ill. 2d at 303; *City of Chicago v. Cecola* (1979), 75 Ill. 2d 423, 389 N.E.2d 526.) For these reasons, we hold that while the nuisance alleged by the plaintiffs is recognized by statute in Illinois, they were free to plead common law public nuisance without mention of the statute.

In order to sufficiently plead a cause of action for public nuisance, the plaintiffs must allege "facts from which the law gives [them] certain rights, a transgression of those rights by the defendant[s] and resulting damages." (*Wheat*, 23 Ill. App. 3d at 17.) The pleading requirements are not strenuous because the "concept of common law public nuisance does elude precise definition" (*Festival Theatre*, 91 Ill. 2d at 306), and the existence of a nuisance "depends on the peculiar facts presented by each case." (*City of Chicago v. Commonwealth Edison*, 24 Ill. App. 3d at 632.) The unreasonableness of the defendant's actions and the substantialness of the right invasion, which lead to the determination of nuisance, are questions of fact for the jury. *Belmar Drive-In Theatre Co. v. Illinois State Toll Highway Comm'n* (1966), 34 Ill. 2d 544, 216 N.E.2d 788.

The allegations necessary to plead a public nuisance cause of action may be based in part on negligence allegations. (*Wheat*, 23 Ill. App. 3d at 17; 29 Ill. L. & Prac. *Nuisances* § 13 (1957).) Moreover, the existence of an ordinance or other law purportedly making a nuisance legal does not automatically destroy a common law nuisance action where the defendant's conduct was not in compliance with the law, where the defendant was otherwise negligent, or where the law itself is invalid for allowing a nuisance. (*Simpson v. Adkins* (1944), 386 Ill. 64, 80-81, 53 N.E.2d 979; *Bauman v. Piser Undertakers Co.* (1962), 34

Ill. App. 2d 145, 149, 180 N.E.2d 705.) This law is applicable in this case, where the plaintiffs sufficiently allege negligence by the defendants, and argue that this negligence created a nuisance. Therefore, any permit held by the defendants, even if it could be considered on a section 2—615 motion, would not defeat the plaintiffs' nuisance allegations when reviewed under section 2—615.

It is clear that the plaintiffs and all members of the public have a right to use the public streets. Thus, by alleging that the canopy was on Wells Street, the plaintiffs have sufficiently alleged the existence of a public right. Next, by alleging that the defendants negligently placed a canopy six feet into the street, the plaintiffs have pleaded facts from which a jury could determine that the defendants unreasonably and significantly interfered with this public right to use Wells Street and with the public safety. Thus, the common law requirements paralleling Restatement section 821B are met by the complaint. Finally, the plaintiffs have satisfied the Illinois common law corresponding to Restatement section 821C by alleging that they suffered personal injury different from the injury suffered by the public at large, who simply suffered impeded use of Wells Street. The plaintiffs were free to plead common law and not statutory nuisance, and the existence of the permit cannot defeat their claim when reviewed under section 2—615.

For these reasons, the order dismissing counts III and IV is reversed and the cause remanded for further proceedings; the order dismissing that part of counts V and VI which alleged a statutory violation is affirmed; the order dismissing that part of counts V and VI which alleged a common law nuisance is reversed and the cause remanded for further proceedings.

Judgment affirmed in part and reversed in part and remanded.

McNAMARA and GIANNIS, JJ., concur.