CORINA E. BANGERT, Plaintiff-Appellant, v. WAL-MART STORES, INC., Defendant-Appellee.

Fifth District   No. 5—97—0127

Opinion filed March 31, 1998.

WELCH, P.J., dissenting.

David R. Fines, of Hershey, Beavers, Periard, Graham & Fines, of Taylorville, for appellant.

Edward J. Cunningham, of Brown, Hay & Stephens, of Springfield, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

On July 30, 1993, after shopping at the Wal-Mart store in Taylorville, Illinois, Corina Bangert left the Wal-Mart store and proceeded across two lanes of traffic that lie between Wal-Mart and the parking aisles. As she walked past the second lane of traffic, Bangert was struck by Sandra Hankin's vehicle. Bangert sued Sandra Hankin and settled that claim. Bangert also sued Wal-Mart and alleged that it was negligent in failing to keep the premises reasonably safe. The trial court held that Wal-Mart owed no duty to the plaintiff, and the court granted Wal-Mart's motion for summary judgment. Plaintiff appeals. We reverse.

■ On an appeal from the trial court's grant of summary judgment, the only issue before the court on review is whether all the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Jewish Hospital v. Boatmen's National Bank*, 261 Ill. App. 3d 750, 755, 633 N.E.2d 1267, 1272 (1994). Although the use of a summary judgment motion is encouraged, it is a drastic means of disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 271, 586 N.E.2d 1211, 1215 (1992). In appeals from summary judgment rulings, the reviewing court conducts a *de novo* review. *Delaney v. McDonald's Corp.*, 158 Ill. 2d 465, 467, 634 N.E.2d 749, 750 (1994). The court of review considers not only the facts alleged but also the reasonable inferences to be derived from those facts, whether the facts are disputed or not. *Jewish Hospital*, 261 Ill. App. 3d at 755, 633 N.E.2d at 1272.

Plaintiff's complaint alleges that Wal-Mart was negligent in one or more of the following ways:

"A. Failed to maintain its parking lot in a reasonably safe condition.

B. Failed to have in place any signs, cross walks [sic], or other controlling devices to channel pedestrian traffic in a safe manner to and from the parking lot to its store.

C. Failed to have any stop signs to govern automobile traffic present in and about those areas in the parking lot where pedestrians travel.

D. Failed to have cross walks [sic] and[/]or cross walk [sic] signs present at the parking lot to govern both automobile and pedestrian traffic.

E. Failed to have present any warning or caution signs at the parking lot to warn and caution both pedestrians and automobile drivers.

F. Failed to have present any yield signs at the parking lot instructing automobiles to yield to pedestrian traffic.

G. Failed to have any signs and[/]or devises present at the parking lot to govern the speed of automobiles in those areas traveled by pedestrians."

■ To succeed on a claim of negligence, a plaintiff must prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from that breach. *Cunis v. Brennan*, 56 Ill. 2d 372, 374, 308 N.E.2d 617, 618 (1974). Whether a defendant owes a plaintiff a duty of care is a question of law for determination by the court. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 525, 513 N.E.2d 387, 396 (1987).

On the day of the accident, Corina Bangert was in her 70s and wore glasses to correct her impaired vision. She testified at her discovery deposition that she had just shopped at Wal-Mart and was walking to her car. As one leaves the store, there are two traffic lanes. The lane directly in front of Wal-Mart travels north; the second lane has traffic traveling south. Plaintiff testified that she had walked across the northbound traffic lane and was nearly across the southbound lane when she was struck by a car. Plaintiff testified that as she approached the area where handicapped patrons park their cars, the front bumper of a car travelling south struck her. It is undisputed that although the Wal-Mart parking lot has markings which outline where vehicles are to park, the parking lot is not equipped with any stop signs, crosswalks, or other traffic- or pedestrian-control devices.

Sandra Hankin testified at her discovery deposition that she has no restrictions on her Illinois driver's license, but when she lived in Missouri, she was required to have outside mirrors on her vehicle because she suffers from the loss of left peripheral and right nasal vision. Hankin testified that she also wears glasses to correct her nearsightedness. She testified that on the day of the accident she drove into the Wal-Mart parking lot, and "[There were people] just going everywhere across here to get to their cars, and behind me, so I stopped and looked to my left to make sure no one else was coming before I drove further." After stopping, Hankin began to move forward and in a southerly direction, and then the impact occurred. She believes she travelled about a foot and was moving about one mile per hour. She did not see Bangert before the accident.

Wal-Mart filed a motion for summary judgment, which had three

bases: (1) Wal-Mart owed no duty to Bangert, (2) there was an independent intervening cause, and (3) Bangert was contributorily negligent. The trial court ruled that as a matter of law Wal-Mart owes no duty to maintain and regulate its parking lot for the safety of its customers. The court reasoned:

> "The existence of traffic in a store's parking lot is unquestionably an open and obvious condition. It is reasonable to expect that those on the premises would recognize the danger and take steps to protect themselves from danger. This is not a case similar to *Ward [v. K mart Corp.*, 136 Ill. 2d 132, 554 N.E.2d 223 (1990),] where the plaintiff was carrying a large object and collided with a post that was open and obvious. There may be policy reasons to impose a duty to provide additional traffic regulation, although it should be recognized that it is impossible to separate pedestrians and vehicular traffic."

Plaintiff argues that the trial court erred in determining that no duty exists on behalf of Wal-Mart.

At issue in this case is whether Wal-Mart and the plaintiff stood in such a relationship to one another that the law imposes upon Wal-Mart an obligation of reasonable conduct for the benefit of the plaintiff. Our supreme court has identified factors relevant to the issue of the existence of a legal duty. Such factors include the reasonable foreseeability of injury, the likelihood of injury, the magnitude of guarding against it, and the consequences of placing the burden upon the defendant. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140-41, 554 N.E.2d 223, 227 (1990). In addition to the factors that underlie the recognition of a duty in any case, we should examine the statutory and case law that might bear upon this situation.

■■ ■ At the time of the accident, the Premises Liability Act provided:

> "The distinction under the common law between invitees and licensees as to the duty owed by an owner or occupier of any premises to such entrants is abolished.
>
> The duty owed to such entrants is that of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them." 740 ILCS 130/2 (West 1994).

In addition to the statute, our supreme court has adopted the rule set forth in sections 343 and 343A of the Restatement (Second) of Torts (1965) regarding the duty of possessors of land to their invitees. *Ward*, 136 Ill. 2d 132, 554 N.E.2d 223; *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 566 N.E.2d 239 (1990). Section 343 provides:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts § 343, at 215-16 (1965).

Section 343A(1) of the Restatement (Second) of Torts serves as an exception to section 343:

"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A(1), at 218 (1965).

In recognizing section 343A as law, our supreme court stated:

"[T]he 'obviousness' of a condition or the fact that the injured party may have been in some sense 'aware' of it may not always serve as adequate warning of the condition and of the consequences of encountering it. It is stated in Prosser & Keeton on Torts:

'[I]n any case where the occupier as a reasonable person should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required. This is true, for example, where there is reason to expect that the invitee's attention will be distracted, as by goods on display, or that after a lapse of time he may forget the existence of the condition, even though he has discovered it or been warned; or where the condition is one which would not reasonably be expected, and for some reason, such as an arm full of bundles, it may be anticipated that the visitor will not be looking for it.' W. Keeton, Prosser & Keeton on Torts, § 61, at 427 (5th ed. 1984)." *Ward*, 136 Ill. 2d at 148-49, 554 N.E.2d at 230-31.

■ Returning to the factors that underlie the recognition of a duty and applying these principles to this case, we consider the reasonable foreseeability of injury to be great. As both Bangert and Hankin testified, pedestrians and traffic move freely within the parking area. There are no traffic- or pedestrian-control devices to speak of. As pedestrians walk to and from the store, it is likely that they will be distracted by their packages, their children, or traffic, and they may suffer injury as a result. The magnitude of the burden on defendant of guarding against injury is slight. Wal-Mart could have taken several measures to guard against injury. Examples include installing

stop signs or yield signs within the parking lot itself. Establishing crosswalks for pedestrians at the stop signs is another measure that Wal-Mart could have taken. In addition, the consequences of placing such a burden on Wal-Mart are not great. Such precautions would not require a large expenditure of money or effort on defendant's part.

We agree with Wal-Mart and the trial court that the existence of traffic in a store's parking lot is an obvious danger. The proper query, however, is not whether there is an obvious danger, but whether Wal-Mart's duty to use reasonable care with regard to its premises extends to the duty to maintain traffic- and/or pedestrian-control devices for the protection of its patrons.

We are not implying that a plaintiff's contributory negligence or a third party's intervening negligence must be ignored. This is a question for the trier of fact to determine and adjust the verdict accordingly. See *Fearheiley v. Summers*, 246 Ill. App. 3d 86, 94, 614 N.E.2d 1377, 1382 (1993).

In the case at bar it was reasonably foreseeable that a motorist would strike a customer/pedestrian. Wal-Mart invited customers into its store without providing any traffic/pedestrian control within its parking area. Wal-Mart had reason to expect that the free movement of vehicles and pedestrians would result in injury. Minor precautionary measures may have prevented this accident.

Wal-Mart can still expect that its customers will exercise reasonable care for their own safety. However, there may be obvious dangers to customers that defendant has a duty to try and remedy. Whether the condition of the parking area served as adequate notice of its danger or whether additional safety measures were necessary to satisfy Wal-Mart's duty are questions properly left to the trier of fact. The trier of fact may also consider whether Bangert was in fact guilty of negligence and whether Hankin's conduct operated as a superseding intervening cause, contributing in whole or in part to Bangert's injury, and adjust the verdict accordingly.

The judgment of the trial court is reversed, and this cause is remanded.

Reversed and remanded.

HOPKINS, J., concurs.

PRESIDING JUSTICE WELCH, ·dissenting:
Perhaps the majority would impose on Wal-Mart the duty to have stop lights and a crossing guard to protect its patrons from the dangers of traffic in the parking lot. I would not.

I agree with the trial court that the danger of traffic in a parking lot is so open and obvious, and the likelihood that a pedestrian will become distracted or forget the danger so small, that it is unreasonable to expect a store owner to anticipate it and that Wal-Mart has no duty to protect its patrons from that traffic. In my opinion, both pedestrians and drivers are so well aware of the dangers involved in crossing a parking lot, or lanes of traffic in a parking lot, that warnings, yield signs, speed bumps, or other protective traffic-control devices would be superfluous and would add nothing to the protection of either pedestrians or drivers. The danger of being struck by traffic while crossing a busy parking lot is such an obvious and known danger, and one faced so regularly by people in our society, that no duty should be imposed on Wal-Mart to protect its patrons from traffic in its parking lot.

In *Ward v. K mart Corp.*, 136 Ill. 2d 132, 149 (1990), our supreme court recognized that in certain situations a landowner owes a duty to protect those lawfully on its premises even from known or open and obvious dangers:

> " '[I]n any case where the occupier as a reasonable person should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required. This is true, for example, where there is reason to expect that the invitee's attention will be distracted, as by goods on display, or that after a lapse of time he may forget the existence of the condition, even though he has discovered it or been warned; or where the condition is one which would not reasonably be expected, and for some reason such as an arm full of bundles, it may be anticipated that the visitor will not be looking for it.' "
> *Ward*, 136 Ill. 2d at 149, quoting from W. Keeton, Prosser & Keeton on Torts § 61, at 427 (5th ed. 1984).

It is clear that none of these situations exist in the case at bar. The majority cites to no evidence in the record which indicates that plaintiff, although in the exercise of ordinary care for her own safety, became distracted or momentarily forgetful of the danger of traffic in the parking lot.

Given the facts presented in the case at bar, no reasonable defendant would anticipate an unreasonable risk of harm to a customer crossing a busy parking lot who has knowledge of the obvious danger. This is not a situation where one might reasonably expect the pedestrian to become distracted or to forget the existence of the danger. Nor is the danger one that, though obvious, would not reasonably be expected to be encountered so that it might be anticipated that a pe-

destrian would not be looking for it. Indeed, a reasonable defendant would anticipate that a customer crossing a busy parking lot and in the exercise of ordinary care for her own safety would be thinking of nothing other than the danger of traffic.

The danger in the case at bar is precisely the type of danger for which the "open and obvious rule" was invented:

> "The only sound explanation for the 'open and obvious' rule must be either that the defendant in the exercise of reasonable care would not anticipate that the plaintiff would fail to notice the condition, appreciate the risk, and avoid it [citation], or perhaps that reasonable care under the circumstances would not remove the risk of injury in spite of foreseeable consequences to the plaintiff." *Ward*, 136 Ill. 2d at 147.

Neither of these explanations applies in the case at bar, for even a defendant in the exercise of reasonable care would not anticipate that a pedestrian would fail to notice, appreciate, or avoid the danger of traffic in the parking lot, nor would any further precautions on the part of defendant remove the risk of injury to such a pedestrian.

Finally, in *Ward*, our supreme court stated:

> "Our holding does not impose on defendant the impossible burden of rendering its premises injury-proof. Defendant can still expect that its customers will exercise reasonable care for their own safety. We merely recognize that there may be certain conditions which, although they may be loosely characterized as 'known' or 'obvious' to customers, may not in themselves satisfy defendant's duty of reasonable care. If the defendant may reasonably be expected to anticipate that even those customers in the general exercise of ordinary care will fail to avoid the risk because they are distracted or momentarily forgetful, then his duty may extend to the risk posed by the condition." 136 Ill. 2d at 156.

The same cannot be said under the majority's holding in the case at bar. The holding of the majority now imposes on all store owners or occupiers the impossible burden of rendering their premises, or at least their parking lots, injury-proof. Such store owners or occupiers can no longer rely on the expectation that their customers will exercise reasonable care for their own safety, for the plaintiff's alleged injuries in the case at bar could result only from her own lack of care and not the lack of care of defendant. The majority has extended the duty recognized in *Ward* far beyond that intended by the supreme court. I cannot concur. Accordingly, I dissent.