NOTICE

Decision filed 10/02/13. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2013 IL App (5th) 120325

NO. 5-12-0325

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| MERCEDENA BURNS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 11-L-245 |
| | ) | |
| SIMON PROPERTIES GROUP, LLP, | ) | |
| a/k/a Simon Property Group (Illinois), L.P., | ) | Honorable |
| | ) | David A. Hylla, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court, with opinion.
Presiding Justice Spomer concurred in the judgment and opinion.
Justice Goldenhersh dissented.

**OPINION**

¶ 1    The plaintiff, Mercedena Burns, appeals from the order of the circuit court of Madison County dismissing her three-count complaint filed against the defendant, Simon Properties Group, LLP, also known as Simon Property Group (Illinois), L.P., after she fell in a pothole and sustained injuries in a parking lot at the Alton Square Mall (mall). For the reasons which follow, we affirm the decision of the circuit court.

¶ 2    On January 1, 2011, the plaintiff was a customer at the mall. After making some purchases, she returned to her car, which was parked in the east parking lot in front of the Macy's store. On her way to the car, she tripped and fell in a pothole near the rear of her car. The plaintiff broke two bones in her left leg and incurred medical bills in excess of $90,000. The defendant owned the mall and was responsible for parking lot maintenance from 1996 until 2007 when it sold its ownership interest to Coyote Alton Mall, L.P. (Coyote).

1

¶ 3    On April 19, 2012, the plaintiff filed an amended complaint against the defendant asserting that she was injured by a public nuisance. Count I alleged creation and maintenance of a nuisance; count II alleged negligent creation of a nuisance; count III alleged wilful and wanton conduct in creation of a nuisance. The plaintiff's complaint alleged that from 1996 until 2007, the defendant allowed the mall parking lot to fall into disrepair due to lack of maintenance, that the defendant had a duty to maintain the mall parking lot in a reasonably safe condition for use by the customers of the stores located in the mall, and that the condition of the parking lot continued unabated until after the plaintiff was injured. The complaint further alleged that the condition of the mall parking lot posed an unreasonable risk to the safety of the mall customers and that the defendant knew of the hazardous condition of the parking lot in 2007 when it conveyed the property to Coyote and knew, or was reckless in not knowing, that Coyote had borrowed heavily and did not have the capital to renovate the parking lot (Coyote went into receivership in 2011). According to the plaintiff, the defendant was aware that the parking lot was hazardous because there were numerous falls by store patrons during the period when the defendant owned the mall. Therefore, the plaintiff concluded that the condition of the east parking lot and the danger it created constituted a public nuisance and this public nuisance was created by the defendant's failure to maintain the parking lot.

¶ 4    On May 11, 2012, the defendant filed a motion to dismiss the plaintiff's complaint under section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)) and under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2010)). In the motion, the defendant argued that the plaintiff had failed to allege sufficient facts to demonstrate the existence of a public right, as required to allege a cause of action for public nuisance, and that the right alleged by the plaintiff, the right not to be negligently injured, was instead a private right. Alternatively, the defendant argued that it did not owe a duty to

2

the plaintiff because it never owned the parking lot where the plaintiff fell and it did not possess, occupy, or control the parking lot during the time that the plaintiff fell. Attached to the motion to dismiss was the affidavit of Paul Grossman, senior litigation paralegal for the defendant, which admitted that in 2007, the defendant maintained the parking lots surrounding and belonging to the mall. The affidavit further set forth that at no time did the defendant own the parcel of land occupied by Macy's or the east parking lot on which the plaintiff fell. The affidavit stated that since August 1, 2007, the defendant "has not maintained, owned, possessed, or controlled the parking lots surrounding and belonging to [the mall], including but not limited to, the parking lot alleged in Plaintiff's complaint." The defendant also attached to its motion information from Madison County showing that Macy's/May Properties was the owner of the parking lot where the plaintiff fell. Ultimately, the trial court entered an order dismissing the plaintiff's complaint pursuant to section 2-615 of the Code, finding that the plaintiff did not state a cause of action for public nuisance. The plaintiff appeals.

¶ 5    In reviewing the dismissal of a complaint under either section 2-615 of the Code (735 ILCS 5/2-615 (West 2010)) or section 2-619 of the Code (735 ILCS 5/2-619 (West 2010)), we apply a *de novo* standard of review. *Dopkeen v. Whitaker*, 399 Ill. App. 3d 682, 684 (2010); *R-Five, Inc. v. Shadeco, Inc.*, 305 Ill. App. 3d 635, 639 (1999). A motion to dismiss under section 2-615 tests the legal sufficiency of the complaint, whereas a motion to dismiss under section 2-619 admits the legal sufficiency of the complaint but asserts an affirmative defense outside the complaint that serves to defeat the cause of action. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). Under either section, we are to accept all well-pleaded facts as true and draw all reasonable inferences from the facts in favor of the nonmoving party. *Dopkeen*, 399 Ill. App. 3d at 684.

¶ 6    A public nuisance is defined as the "doing of or the failure to do something that

3

injuriously affects the safety, health or morals of the public, or works some substantial annoyance, inconvenience or injury to the public." (Internal quotation marks omitted.) *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 370 (2004). In order for there to be a sufficient pleading in a public nuisance cause of action, the pleading must "allege a right common to the general public, the transgression of that right by the defendant, and resulting injury." *Id.* at 369. More specifically, the pleading must allege facts in support of the following four distinct elements of a public nuisance claim: (1) the existence of a public right; (2) a substantial and unreasonable interference with that right by the defendant; (3) proximate cause; and (4) injury. *Id.*

¶ 7    The first element that must be alleged is the existence of a right common to the general public. *Id.* at 370. The supreme court has defined "public right" as follows:

> " 'The interference with a public right is the sine qua non of a cause of action for public nuisance. However, not all interferences with public rights are public nuisances. The nuisance must affect an interest common to the general public, must produce a common injury, or be dangerous or injurious to the general public, or it must be harmful to the public health, or prevent the public from a peaceful use of their land and the public streets, or there must be some direct encroachment on public property.' " *Id.* at 373 (quoting 58 Am. Jur. 2d *Nuisances* § 39 (2002)).

A public right is " 'collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured.' " *Id.* (quoting Restatement (Second) of Torts § 821B, cmt. *g*, at 92 (1979)). A nuisance becomes public when it occurs in a public place, or where the public frequently congregates, or where members of the public are likely to come within the range of its influence. 58 Am. Jur. 2d *Nuisances* § 30 (2010). The nuisance is also considered a public nuisance when it affects a place where the public has a legal right to go, such as a park, street, or alley, and if the conduct or condition

4

necessarily annoys, offends, or injures those who come within the scope of its influence. *Id.* However, the nuisance is not a public one if it occurs in a place of business to which an invitee has no public right to go. *Id.*

¶ 8      In the instant case, the plaintiff identified the following as the public right in her public nuisance claim: the right to have a reasonably safe means of ingress and egress to the mall stores over the parking lot. In response, the defendant argues that the plaintiff was asserting a right not to be negligently injured, which is a private right and not actionable as a public nuisance.

¶ 9      The trial court relied on cases from foreign jurisdictions, a Connecticut case, *Wrighten v. Rapid Car Wash, Inc.*, No. 5001056 (Conn. Super. Ct. 2007) (unpublished opinion), and a federal district case from the eastern district of Pennsylvania, *Ricchiuti v. The Home Depot Inc.*, 412 F. Supp. 2d 456 (E.D. Pa. 2005), as support for the dismissal of the plaintiff's complaint for public nuisance. In *Ricchiuti*, 412 F. Supp. 2d at 460, the Pennsylvania court concluded that a pothole in a parking lot used by the public was not considered a public nuisance. The court reasoned that a pothole in a parking lot affected a defined portion of the community, specifically, the users of that particular parking lot. *Id.* Accordingly, the court concluded that the pothole did not constitute a public nuisance because it did not affect the " 'community at large' by interfering with a public way or create a significant hazard to the public." *Id.*

¶ 10     Here, the trial court agreed with the above reasoning and determined that the plaintiff had no public right to be on the Macy's parking lot and no public right to have the Macy's parking lot in a reasonably safe condition. The court reasoned as follows:

> "The public, in general, are not 'business invitees' simply because they have been invited for business, the relationship is established by their physical acceptance. ***
> [P]ublic rights are generally not rescindable like business invitations. A business

5

invitation to be on property can obviously be revoked like any license. Also, public rights stem from being part of the public and the right for people to come onto the parking lot in this case stems from an invitation for business by private business owners who had shops in the mall. There was no right to be on the property before the businesses extended the invitation, and there would be no right to be on the property after the businesses rescinded the invitation."

Accordingly, the court concluded that the plaintiff was on the Macy's parking lot by invitation only and had no public right to be there. The court further concluded that the plaintiff had no public right to have the parking lot in a safe condition.

¶ 11    We agree with the reasoning of the trial court and conclude that the plaintiff was not exercising a right common to the public at the time that she entered the parking lot for the purpose of patronizing Macy's. The deterioration of the Macy's parking lot did not affect the "community at large" and instead affected a defined segment of the community, namely, those using the Macy's parking lot with the intention of entering and exiting the Macy's store. The plaintiff asserts that she had a right not to be negligently injured when she used the mall parking lot for ingress and egress to the Macy's store. However, as stated above, a public right is one common to all members of the general public and is different from the individual right that everyone has not to be negligently injured. While members of the public were welcome to use the parking lot for access to the mall stores, they were not entitled to do so by virtue of any right common to the general public. Accordingly, we conclude that the plaintiff was not exercising any public right while on the Macy's parking lot.

¶ 12    Additionally, the plaintiff argues that a cause of action for public nuisance is not precluded just because it occurred on privately owned land. In *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 364-66 (1985), our supreme court held that a nuisance that existed on Wrigley Field, which is privately owned, was a public nuisance

6

because it affected the peace and tranquility of the neighborhood. Our supreme court specifically stated: "A private nuisance, however, that interferes with public rights can also constitute a public nuisance." *Id.* at 365. However, we reiterate that the plaintiff was not exercising a right common to the public at the time that she entered the parking lot for the purpose of patronizing Macy's. Therefore, we agree with the trial court's dismissal of the plaintiff's complaint under section 2-615 of the Code (735 ILCS 5/2-615 (West 2010)) because she failed to state a cause of action for public nuisance.

¶ 13 We note that the defendant filed a combined motion to dismiss pursuant to sections 2-615 and 2-619 in the trial court. However, the trial court dismissed the plaintiff's complaint pursuant to section 2-615 and did not address the issues raised in the section 2-619 motion. In its brief filed with this court, the defendant argues that we can affirm the trial court's dismissal on the basis of the section 2-619 motion. Specifically, the defendant argues that it had no duty to the plaintiff because it never owned the parking lot where the plaintiff fell and it did not possess, occupy, or control the parking lot during the time that the plaintiff fell. The defendant points to the affidavit of Paul Grossman for support. According to the affidavit, the defendant owned the mall and was responsible for maintaining the parking lots surrounding the mall in 2007; the defendant never owned the parcel of land occupied by Macy's or the east parking lot on which the plaintiff fell; on August 1, 2007, the defendant sold its entire possessory interest, including all assets and liabilities, to Coyote; the defendant has not owned, controlled, operated, had possession, or had any possessory interest in the mall or the parking lot since the sale; Coyote took over the contractual duty to maintain the mall, which included the mall parking lot where the plaintiff fell on January 1, 2011; and the defendant has not been contractually obligated to maintain the mall or the mall parking lot since August 1, 2007.

¶ 14 In response, the plaintiff argues that the defendant owed a duty to patrons of the mall

7

to provide reasonably safe access to the mall across the parking lot, which was provided for that purpose. Further, the plaintiff argues that the defendant created the public nuisance by its failure to maintain the mall parking lot and the subsequent conveyance of the property to Coyote does not insulate the defendant from liability for the plaintiff's injuries. In support of the argument that the defendant had a duty to the patrons of the mall, the plaintiff cites *Bangert v. Wal-Mart Stores, Inc.*, 295 Ill. App. 3d 418 (1998). In *Bangert*, 295 Ill. App. 3d at 420, the plaintiff, a customer at a Wal-Mart store, brought a negligence action against Wal-Mart for injuries that she had sustained when she was struck by a vehicle while walking in the parking lot. This court reversed the trial court's granting of summary judgment in favor of Wal-Mart, finding that Wal-Mart had a duty to protect patrons of its parking lot. *Id.* at 424. This court determined that it was reasonably foreseeable that a motorist would strike a customer of the store in the parking lot and that Wal-Mart had a duty to maintain reasonable traffic and/or pedestrian control devices within its parking lot for the protection of its customers. *Id.*

¶ 15    The plaintiff further argues that the defendant cannot escape liability by arguing that it lacked control over the parking lot at the time of the plaintiff's injury because control is not an element of a cause of action for public nuisance. In support, the plaintiff cites *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351 (2004). In *Beretta U.S.A. Corp.*, 213 Ill. 2d at 355-56, the City of Chicago and Cook County brought an action for public nuisance against firearm manufacturers, distributors, and dealers seeking to recover expenditures for emergency law enforcement and emergency medical services incurred as a result of gun violence. One argument made by the defendants was that Illinois law did not permit liability to be imposed for public nuisance unless the defendant was in control of the instrumentality causing the injury at the time of the injury. *Id*. at 396. The court disagreed and concluded that liability in public nuisance was not necessarily precluded simply because the defendants

8

no longer controlled the object that caused the injury. *Id.* at 403. Specifically, our supreme court explained the following with regard to control being an element of public nuisance:

"Control is not a separate element of causation in nuisance cases that must be pleaded and proven in addition to cause in fact and legal cause. It is, rather, a relevant factor in both the proximate cause inquiry and in the ability of the court to fashion appropriate injunctive relief. *When the nuisance results from a condition or conduct upon land, control over the land is generally a necessary prerequisite to the imposition of liability*. [Citation.] However, when the nuisance results from the use or misuse of an object apart from land, or from conduct unrelated to a defendant's use of land, lack of control of the instrumentality at the time of injury is not an absolute bar to liability." (Emphasis added.) *Id.*

¶ 16    In determining whether control was a necessary element for public nuisance, the supreme court distinguished between a nuisance that resulted from the use or misuse of an object apart from land and a nuisance that resulted from a condition or conduct upon land. The present case involves a nuisance that resulted from a condition or conduct upon land, and therefore control over the land is generally a necessary prerequisite to the imposition of liability for public nuisance.

¶ 17    Further, the plaintiff cites section 840A of the Restatement (Second) of Torts and comment *c* as support for her position that the defendant cannot escape liability as the creator of the nuisance. Section 840A describes a party's continuing liability for a public nuisance after transfer of the land:

"A vendor or lessor of land upon which there is a condition involving a nuisance for which he would be subject to liability if he continued in possession remains subject to liability for the continuation of the nuisance after he transfers the land." Restatement (Second) of Torts § 840A(1), at 168-69 (1979).

9

Comment *c* explains a party's continuing liability as follows:

"If the vendor or lessor has himself created on the land a condition that results in a nuisance, he cannot escape liability for the continuation of the nuisance by selling or leasing the land to another. In these cases it frequently has been said that by transferring the land with the condition existing upon it he has authorized the continuation of the nuisance. This is usually somewhat fictitious; and a better reason is that his responsibility toward those outside of his land is such that he is not free to terminate his liability to them for the condition that he has himself caused or concealed, by passing the land itself on to a third person. The effect of the rule is to require vendors and lessors in order to avoid liability to take reasonable steps to abate existing conditions involving any nuisance before they transfer the land." Restatement (Second) of Torts § 840A, cmt. *c*, at 169 (1979).

¶ 18    According to the Restatement, a "vendor or lessor of land" that has created a public nuisance on the land cannot escape liability for the continuation of the nuisance by selling or leasing the land to another. However, in this case, the defendant was not a vendor or lessor of the parking lot where the plaintiff was injured. The defendant neither owned nor leased the east parking lot in 2007 and had no ownership interest or control over the parking lot when the plaintiff was injured in 2011. Therefore, the defendant cannot be considered a "vendor or lessor of land" as described in section 840A of the Restatement and therefore cannot be held liable on the basis of public nuisance for the injuries that resulted from the plaintiff tripping over a pothole in the Macy's parking lot.

¶ 19    Our conclusion is supported by *Maisenbach v. Buckner*, 133 Ill. App. 2d 53 (1971), a First District case. The defendants in *Maisenbach* were the former owners of private property which abutted a public way on which a nuisance existed. *Id.* at 54. The minor plaintiff suffered injuries when he tripped over a chain fence that surrounded a parkway area

10

between a sidewalk and a street. *Id.* at 53. The plaintiff sued the former owners of the property abutting the parkway because the former owners had maintained the fence until the time they had sold the property. *Id.* However, the facts indicated that the former owners did not possess, control, or own either the parkway or the property abutting the parkway at the time of the injury. *Id.* at 54. In his complaint, the plaintiff alleged that the fence was a public nuisance and that the person who had created a nuisance on a public way which abutted the creator's property was liable to individuals who were injured as a result of the nuisance even though, at the time of the injury, the creator did not own, possess, or control the property abutting the public way. *Id.*

¶ 20    The First District concluded that a former property owner was not liable for injuries which were sustained after the owner had severed all relationship with the property connected to an alleged nuisance. *Id.* at 56. The court noted that the defendant had absolutely no interest in the property abutting the parkway at the time that the plaintiff was injured and that the plaintiff had not cited any cases in which a "maintainer of a nuisance was held liable for damages caused after he had completely divested himself from any connection with the property involved." *Id.* at 55. The court stated that generally in Illinois, the liability of a landowner for injuries occurring in connection with the property ends with the cessation of ownership, possession, and control of the property. *Id.* at 56. The court reasoned that the "free and unhindered alienation of real property–long the public policy of Illinois–would be seriously and adversely affected if property owners were to become liable for personal injuries which occurred long after they sold their interest to another party." *Id.* Accordingly, the court concluded that where the landowner clearly had no right to control the property after he sells it to another, he cannot have any duty to third persons injured in connection with the property after the sale. *Id.*

¶ 21    In the instant case, like *Maisenbach*, the defendant had no ownership interest over the

11

east parking lot at the time that the plaintiff was injured. Further, the defendant had no ownership interest over the east parking lot at the time that it was property manager of the mall. The defendant had contracted with Macy's, the owner of the parking lot, to maintain Macy's section of the parking lot; however, that contract terminated in 2007, when the defendant sold its interest in the mall to Coyote. Coyote then resumed the property management duties of the mall, which included maintaining the east parking lot. Therefore, we agree with the defendant that the trial court would not have erred if it had dismissed the plaintiff's complaint alleging public nuisance pursuant to section 2-619.

¶ 22    For the foregoing reasons, the judgment of the circuit court of Madison County is hereby affirmed.


¶ 23    Affirmed.


¶ 24    JUSTICE GOLDENHERSH, dissenting:

¶ 25    I respectfully dissent. In order for there to be a sufficient pleading in a public nuisance cause of action, the pleading must "allege a right common to the general public, the transgression of that right by the defendant, and resulting injury." *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 369, 821 N.E.2d 1099, 1113 (2004). More specifically, the pleadings must allege facts in support of the following four distinct elements of a public nuisance claim: (1) the existence of a public right; (2) a substantial and unreasonable interference with that right by the defendant; (3) proximate cause; and (4) injury. *Beretta U.S.A. Corp.*, 213 Ill. 2d at 369, 821 N.E.2d at 1113. The pleading requirements are not arduous because the concept of common law public nuisance eludes precise definition. *Gilmore v. Stanmar, Inc.*, 261 Ill. App. 3d 651, 661, 633 N.E.2d 985, 993 (1994). The allegations necessary to plead a public nuisance may be based partly on allegations of

negligence. *Gilmore*, 261 Ill. App. 3d at 661, 633 N.E.2d at 993. Whether a public nuisance exists depends on the facts of each case and is a question for the trier of fact. *Gilmore*, 261 Ill. App. 3d at 661, 633 N.E.2d at 993.

¶ 26 With regard to the first element, in order to state a claim for public nuisance, the plaintiff must allege the existence of a right common to the general public, which includes the rights of public health, safety, peace, comfort, and convenience. *Beretta U.S.A. Corp.*, 213 Ill. 2d at 370-71, 821 N.E.2d at 1114 (citing restatement (Second) of Torts § 821B(2)(a) (1979)). In her amended complaint, plaintiff alleged that during the period from 1996 to 2007, when defendant owned, operated, and controlled the mall, it had a duty to maintain the mall and the surrounding parking lots in a reasonably safe condition for use by customers of the stores located in the mall to enter or leave the stores. The amended complaint also alleged that "[t]he public were expected and anticipated to use the parking lot as a means to enter or exit the stores" and that defendant "knew at all times material hereto that the condition of the east parking lot was a danger and hazard to the safety of members of the public."

¶ 27 With regard to the second element, plaintiff alleged: "The condition of the surface of the east parking lot and the danger created a public nuisance. It was foreseeable the condition could cause injury to members of the public." Plaintiff set forth that defendant was on notice due to numerous falls by patrons of the mall during the period of 1996 to 2007 and also when it conveyed the mall to Coyote in 2007. Plaintiff also alleged defendant knew Coyote was "highly borrowed, without sufficient capital to renovate the east parking lot." With regard to the third and fourth elements, plaintiff alleged that as a direct and proximate result of the public nuisance, plaintiff tripped and fell in a pothole and sustained damages as a result.

¶ 28 The trial court dismissed plaintiff's complaint pursuant to section 2-615, finding that

13

plaintiff's allegations did not state a claim for public nuisance. The trial court ruled as a matter of law that the lot is not public, but rather private because "[p]laintiff had no right to be in this parking lot independent of the business invitation and the permission to be on it was revocable. While this parking lot may be attached to public roads it is distinct from them and could be closed to the public by the owner." However, taking the allegations in the complaint as true, which we are required to do, the trial court was premature in finding that there was no public nuisance stated in the complaint. Defendant presented no affidavits in support of its assertion that the mall parking lot was not a public place. The trial court was premature in making this determination, and plaintiff was not allowed to adequately develop her theory of the case.

¶ 29    In *Bangert v. Wal-Mart Stores, Inc.*, 295 Ill. App. 3d 418, 695 N.E.2d 56 (1998), this court reversed the trial court's granting of summary judgment in favor of Wal-Mart, finding that Wal-Mart had a duty to protect patrons on its parking lot:

"In the case at bar it was reasonably foreseeable that a motorist would strike a customer/pedestrian. Wal-Mart invited customers into its store without providing any traffic/pedestrian control within its parking area. Wal-Mart had reason to expect that the free movement of vehicles and pedestrians would result in injury. Minor precautionary measures may have prevented this accident." *Bangert*, 295 Ill. App. 3d at 424, 695 N.E.2d at 59.

The public has a right to be protected on the parking lots which provide access to the stores in which they shop.

¶ 30    Moreover, a public nuisance can occur on privately owned property. For example, in *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 483 N.E.2d 1245 (1985), our supreme court held that a nuisance that existed on Wrigley Field, which is privately owned, was a public nuisance because it affected the peace and tranquility of the

14

neighborhood. Our supreme court specifically stated: "A private nuisance, however, that interferes with public rights can also constitute a public nuisance." *Chicago National League Ball Club, Inc.*, 108 Ill. 2d at 365, 483 N.E.2d at 1249.

¶ 31 In the instant case, plaintiff contends that the parking lot where she fell was littered with potholes and uneven surfaces and had not been maintained and that its condition constituted a public nuisance. The trial court's reason for dismissing the complaint that plaintiff was a business invitee whose invitation could be revoked at any time was not supported by any Illinois case law. The court relied on cases from foreign jurisdictions, a Connecticut case, *Wrighten v. Rapid Car Wash, Inc.*, No. 5001056 (Conn. Super. Ct. 2007) (unpublished opinion), and a federal district case from the eastern district of Pennsylvania, *Ricchiuti v. The Home Depot Inc.*, 412 F. Supp. 2d 456 (E.D. Pa. 2005). Defendant has failed to cite any Illinois case which holds a pothole in a private lot can never constitute a public nuisance. I disagree with the trial court's analysis, particularly its reliance on cases from foreign jurisdictions in support of its conclusion, that a pothole in a private lot can never constitute a public nuisance. Such a hard and fast ruling is contrary to our state's policy to protect patrons from dangerous conditions on parking lots. See, *i.e.*, *Ward v. K mart Corp.*, 136 Ill. 2d 132, 554 N.E.2d 223 (1990).

¶ 32 Here, plaintiff pleaded sufficient facts required in a cause of action based upon public nuisance, specifically a right of the public and a corresponding duty on the owner or occupier of the land to have a reasonably safe means of ingress and egress, a violation of that right through the creation of conditions posing an unreasonable risk of harm to the public required to use the lot in order to access stores in the mall, and injury and damages proximately resulting from the nuisance. Moreover, even though defendant sold its interest in 2007, it was not necessarily relieved of its duty.

¶ 33 Defendant asserts that plaintiff's complaint fails to state a cause of action because at

15

the time of plaintiff's alleged fall, defendant had completely divested itself from ownership and control over the mall and the parking lot. However, "[a] vendor or lessor of land upon which there is a condition involving a nuisance for which he would be subject to liability if he continued in possession remains subject to liability for continuation of the nuisance after he transfers the land." Restatement (Second) of Torts § 840A(1), at 168-69 (1979). Comment *c* to section 840A of the Restatement specifically states as follows:

> "If the vendor or lessor has himself created on the land a condition that results in a nuisance, he cannot escape liability for the continuation of the nuisance by selling or leasing the land to another. In these cases it frequently has been said that by transferring the land with the condition existing upon it he has authorized the continuation of the nuisance. This is usually somewhat fictitious; and a better reason is that his responsibility toward those outside of his land is such that he is not free to terminate his liability to them for the condition that he has himself caused or concealed, by passing the land itself on to a third person. The effect of the rule is to require vendors and lessors in order to avoid liability to take reasonable steps to abate existing conditions involving any nuisance before they transfer the land." Restatement (Second) of Torts § 840A, cmt. *c*, at 169 (1979).

"[L]iability in public nuisance is not necessarily precluded simply because defendants no longer control the objects." *Beretta U.S.A. Corp.*, 213 Ill. 2d at 403, 821 N.E.2d at 1132.

¶ 34 In the instant case, plaintiff alleged defendant owned the mall and maintained the parking lots, including the one in question, from 1996 until 2007, during which time the pothole in question was created, and knew that Coyote did not have the means to rectify the parking lot nuisance which led to plaintiff's injury. An affidavit submitted by defendant's employee admitted defendant maintained the parking lots surrounding the mall in 2007. While defendant did not own the parking lot, it owned the mall where plaintiff shopped prior

16

to her fall and was responsible for maintenance of the parking lot until 2007. Even though someone else may also be at fault, defendant is not necessarily absolved of its own liability. Plaintiff's theory is that defendant's lack of maintenance during its ownership of the mall and control of the parking lot in question created the condition that led to plaintiff's injury.

¶ 35    Accepting as true all well-pleaded facts and drawing all reasonable inferences from the facts in favor of the nonmoving party, whether the parking lot constituted a public nuisance is a question of fact that should not have been resolved by a motion to dismiss. Plaintiff should have been allowed the opportunity to conduct discovery and submit evidence to support her public nuisance theory, and the trial court improperly ruled as a matter of law that the pothole did not constitute a public nuisance.

¶ 36    For the foregoing reasons, I would reverse the judgment of the circuit court and remand for further proceedings.

2013 IL App (5th) 120325

NO. 5-12-0325

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| MERCEDENA BURNS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 11-L-245 |
| | ) | |
| SIMON PROPERTIES GROUP, LLP, | ) | |
| a/k/a Simon Property Group (Illinois), L.P., | ) | Honorable |
| | ) | David A. Hylla, |
| Defendant-Appellee. | ) | Judge, presiding. |

**Opinion Filed**: October 2, 2013

---

**Justices**: Honorable Thomas M. Welch, J.

Honorable Stephen L. Spomer, P.J.,
Concurred
Honorable Richard P. Goldenhersh, J.,
Dissented

---

**Attorneys for Appellant**

John Dale Stobbs, Andrew K. Carruthers, Stobbs, Sinclair & Carruthers, Ltd., 500 Bond Street, P.O. Box 336, Alton, IL 62002-0336

---

**Attorneys for Appellee**

Scott D. Bjorseth, David A. Schott, Hoagland, Fitzgerald & Pranaitis, 401 Market Street, P.O. Box 130, Alton, IL 62002